Filed May 8, 1894.

———————◆———————

No. 16,641.

·KAUFMAN *v.* STEIN.

NUISANCE.—*Injunction.*—*Removal of Wooden Building Within City Fire Limits.*—A property owner may maintain a suit to enjoin the removal of a wooden building to a place within the fire limits, in violation of a city ordinance forbidding it, where it is to be located dangerously near the plaintiff's frame house.

SAME.—*City.*—*Protection Against Fire.*—*Inherent Power.*—A city in this State, without reference to any legislative grant, has inherent power to prescribe fire limits, and to prohibit the removal of wooden buildings into such limits.

SAME.—*Removal of Buildings.*—*What Amounts to.*—When fire limits are established, it is presumed that it is with reference to the existing location of buildings within such limits, and the subsequent removal of a wooden building to a point twenty feet distant upon the same lot is within the inhibition.

From the Vigo Circuit court.

*T. W. Harper* and *A. B. Felsenthal,* for appellant.

*J. Jump, J. E. Lamb* and *J. C. Davis,* for appellee.

DAILEY, J.—This was an action for an injunction commenced by the appellant against the appellee.    The appellee entered an appearance to the action, and filed a demurrer to the complaint, for the reason that the complaint "does not state facts sufficient to constitute a cause of action against the defendant."    The material allegations con-

tained in the complaint are as follows: 1. That plaintiff (appellant) is the owner of lot 31, in Rose's addition to the city of Terre Haute. 2. That there are, upon said lot, a dwelling house and other buildings. 3. That defendant owns an adjoining lot to plaintiff's said premises. 4. That upon defendant's lot there is a large frame building. 5. That both plaintiff and defendant's lots are within the fire limits of the city of Terre Haute. 6. That the common council of the city of Terre Haute had lawfully adopted an ordinance establishing "fire limits;" a copy of which is filed with the complaint and marked "Exhibit A," and which ordinance was in full force at the time of the commencement of this suit. 7. The ordinance provides that no wooden buildings shall be erected within said limits; that if such building has been heretofore erected within said limits, and it shall be removed, it shall not be relocated within the fire limits. 8. That defendant is about to remove the said frame building now on his lot, and relocate the same within said limits, twenty feet nearer plaintiff's house, and within four feet of plaintiff's property, and ten feet from plaintiff's frame dwelling house, thereby increasing the danger from fire, and making the danger imminent, increasing cost of insurance, etc. 9. That the defendant has the tools, men and machinery ready to remove the same, and will do so unless restrained. 10. That defendant will not encase his said frame building with stone, iron or brick, so as to render it fire proof. The court sustained the demurrer, to which appellant excepted and stood on his complaint, whereupon the court rendered judgment for appellee, from which ruling and action of the court appellant duly appealed. In the case here presented the complaint avers, and the demurrer admits, that the removal and relocation of the appellee's frame building, as threatened, will put the ap-

pellant's property in imminent danger from fire.   From the briefs of counsel it appears that one point made by counsel for the appellee in argument on the demurrer before the court below was "that the plaintiff was not entitled to maintain this action, but that the city could alone enforce the penalty provided by the ordinance," "or in other words, that an individual could not have an injunction in such a case, even if the ordinance in question here was, in all its provisions, valid, as being within the power of the common council to adopt, because the only remedy in such case was by a prosecution in the name of the city for a violation of the ordinance." Counsel say they do not rely upon this proposition. They concede that "where an individual shows that he suffers or will sustain special damages or injury, above and beyond what the public generally will suffer, by reason of anything which may constitute an injury or damage to the public generally, he may maintain such an action as is proper in the given case to recover damages for, or to prevent the doing of, such a thing."   An individual has, and always had, the right to enjoin the erection or continuance of a nuisance where he will suffer a special injury or annoyance, different in kind and degree to that sustained by the public generally. *Keiser* v. *Lovett*, 85 Ind. 240; *Reichert* v. *Geers*, 98 Ind. 73; *Owen* v. *Phillips*, 73 Ind. 284.

In *Baumgartner* v. *Hasty*, 100 Ind. 575, at p. 579, it is said:   "It is one of the oldest of the common law rules, that an individual citizen may, without notice, abate a nuisance; and, if necessary to effectually abate it, destroy the thing which creates it."   A wooden building is not a nuisance *per se*.   It is the circumstances that make it a nuisance.   A powder mill is not a nuisance *per se*, nor is a slaughter house, or glue factory, but if located in populous neighborhoods they are nuisances.   And "even

when they are originally built in a place remote from the habitations of men, or from public places, if they become actual nuisances by reason of roads being afterwards laid out in their vicinity, or by dwellings subsequently erected within the sphere of their effects, the fact of their existence prior to the laying out of the roads, or the erection of the dwellings, is no defense.'' Wood Law of Nuisances, 572; *Reichert* v. *Geers, supra,* at p. 75; *Baumgartner* v. *Hasty, supra,* 575. In the case last cited, ELLIOTT, J., says: ''A wooden building is not, in itself a nuisance, but when erected in a place prohibited by law, and where it endangers the safety of adjoining property, it may become a nuisance.  *  *  *  There are many things that are not nuisances *per se,* but which become such when placed in locations forbidden by law,'' etc.  Citing Wood's Law of Nuisance, section 109.

We think the complaint under consideration brings this case within the rule thus laid down, as it is alleged that the building is a wooden structure; that it will be removed to a place within the fire limits in violation of a city ordinance forbidding it, and that it will be located within ten feet from the plaintiff's frame house, making the danger imminent.

Upon the proposition ''that the common council of the city of Terre Haute had no power to pass the ordinance in question,'' it is insisted that ''inasmuch as the charter had granted certain specific powers to the city  *  *  *  none other could be exercised.''

The charter provisions are found in R. S. 1881, section 3106; Burns' R. S., 1894, section 3541, subdivision 32, which provides that the common council shall have power ''to prevent the erection of wooden buildings in such part of the city as the common council may determine.''

Also, in sections 3198 and 3199, R. S. 1881, being sections 3661 and 3662, Burns' Rev. 1894. It is clear that the specific power granted by subdivision 32, *supra*, is to prevent the "erection" of wooden buildings. Nothing is said about the "removal," and it is insisted, therefore, that so much of the ordinance as attempts to prevent the removal of wooden buildings within or without the fire limits is *ultra vires* and void, and in contravention of a common right of an owner to do as he pleases with his own property.

The provisions of the ordinance are, in brief, as follows:

Section 1. Defines the fire limits.

Section 2. Provides that no frame building shall be erected within the fire limits.

Section 3. Provides a penalty for removing, or assisting to remove, any frame building from a point within or without to a point within the said fire limits.

Section 4. Provides that any building so erected or removed shall be deemed a nuisance.

Section 5. Provides against the location of lumber yards within said limits.

Appellant admits that the authority to pass an ordinance against the removal of a wooden building is not specifically granted, but insists that it comes within the intention of the Legislature. That the object of granting the power to the city was to enable the common council to take precautions against the destruction of the city by fire.

In the case of *Clark* v. *City of South Bend*, 85 Ind. 276, the same point was presented that is now urged, but the court said: "This is a more narrow view of the subject than the books warrant counsel in assuming."

If the ordinance in question concerning removals of buildings is so in derogation of common right as to be void, and if the common council is restricted in its leg-

islative acts to such ordinances only as are literally in compliance with the statutes, it could not prohibit the removal of frame buildings, but only the erection thereof, within the limits, and any person so desiring could construct his house outside of the fire limits and then remove it to a place within, and by a series of removals there might be no end of frame buildings brought within such limits. Such construction would permit parties to accomplish indirectly what they could not do directly, and so evade the ordinance as to render it nugatory. If the power is to be strictly construed, what is there to prevent the erection of a lumber yard upon each vacant lot of the city? The express power is "to prevent the erection of wooden buildings." A lumber pile is not a building, and there is no express power given the city to prevent a lumber yard within the fire limits, yet who would question the inherent right of the council, in the exercise of its police power, to provide against and inhibit the keeping of such combustible material so as to endanger property rights?

In the case of *Clark* v. *City of South Bend, supra,* the ordinance prohibited the accumulation of straw. The court said: "There can be no doubt that the Legislature meant to confer broad powers upon municipalities in the matter of providing against danger from fires."

And the ordinance was held valid, even though, as here, there was no express power.

It is simply a police regulation, and, as is said in *Brady* v. *Northwestern Ins. Co.*, 11 Mich. 425: "Of the power of the common council to pass the ordinances in question we have no doubt. They contravene no provision of the constitution, as we read it, and they were made in the exercise of a police power necessary to the safety of the city."

It is provided in section 3155, R. S. 1881, being sec-

tion 3616, Burns' Rev. 1894, that: "The common council shall have power to make other by-laws and ordinances not inconsistent with the laws of the State, and necessary to carry out the objects of the corporation."

We think the ordinance in question violated no provision of the constitution or laws of this State, and that without any charter provision the ordinance would be a valid act based upon an inherent right.

We are aware that the doctrine of inherent right is disputed in some of the States, as appears by the following authorities: *State* v. *Schuchardt* (La., 1890), 7 So. Rep. 67; *Kneedler* v. *Norristown*, 100 Pa. St. 368; *City of Des Moines* v. *Gilchrist*, 67 Iowa, 210; *Pye* v. *Peterson*, 45 Tex. 312.

But, in 15 Am. and Eng. Encyc. of Law, p. 1170, it is said: "The decided weight of authority in this country is, that municipal corporations have the power, under the general welfare clauses usually contained in their charters, *without express legislative grant*, to establish fire limits, forbidding the erection of wooden buildings, etc."

To support this doctrine the author cites a great number of decisions, and, in note 1, says: "These cases all rest on solid principle, for the rule has always been that a municipal corporation has the *inherent power* to enact ordinances for the protection of the property of its citizens against fire." Citing the cases (among others): *Clark* v. *City of South Bend, supra; Baumgartner* v. *Hasty, supra; Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; Kent's Comm., 339.

The remaining question to be considered is, was there an erection of a building or a removal thereof, within the meaning of the ordinance?

In some of the States the removal of a building and

locating the same upon another spot, is held to be an "erection." *Wadleigh* v. *Gilman*, 12 Me. 403.

Also, "to enlarge or elevate a wooden building so as to alter its character, is an erection of such building within the meaning of the ordinance." *Douglass* v. *Commonwealth*, 2 Rawle (Pa.), 262.

In Connecticut, however, a removal taking place wholly within the fire limits is not such "erection." *Daggett* v. *State*, 4 Conn. 60; *Booth* v. *State*, 4 Conn. 65; *Tuttle* v. *State*, 4 Conn. 68; *State* v. *Brown*, 16 Conn. 54; *Brown* v. *Hunn*, 27 Conn. 332.

The word "erect" is defined, in Anderson's Law Dic., p. 410: "To lift up, build, construct; as to erect a building, a fixture." "Removing a building is not erecting it; nor is elevating or materially changing it."

The weight of authorities supports the position held by the courts of Connecticut on this question.

It is insisted, by the appellee, that as the act threatened does not contemplate the taking of the house from the lot it occupies, it would not constitute a removal within the meaning of the ordinance.

Webster defines the word remove to be: "To move away from the position occupied; to cause to change place; to displace; as, to remove a building."

Of course the removal must be a substantial one. The mere turning of a building, or the change of the foundation so as to permit the erection of a bay window, would hardly come within the rule. But the fact that the structure is not to be taken from the lot upon which it was originally built, or where it stands, can not be the criterion. The word "lot" contains no legal or other meaning as to quantity, except it is a distinct portion of land, usually smaller than a field. It is such part as the owner may fix in his plat. It may be large or small. A man might move his house over considerable space

and still leave it on his lot. If the house were taken from one man's land and located on another's, there can be no doubt it would be a removal, and yet, the test is not that by the contemplated change the house is to be set in a particular spot or position.

The allegation is that the appellee was about to remove it twenty feet nearer appellant's land and within ten feet of his house. That assertion is admitted, by the demurrer, to be true. This court can not say, as a matter of law, that a removal of twenty feet is not a substantial removal of the house. If it was not a removal, the facts showing that it was a mere change should have been stated by way of answer.

The language of the complaint is "That defendant is about to remove the said frame building upon his lot and relocate the same within said [fire] limits, twenty feet nearer the plaintiff's house and within four feet from plaintiff's property, and ten feet from plaintiff's frame house, etc."

It will be thus seen that the charge is that defendant is about to remove and relocate the entire building. The expression used negatives the idea that the mere form of the building was to be changed, and conclusively shows that the intended change materially increases the risk and danger from fire to plaintiff's building, and also increases the rate of insurance. It is true a removal of twenty feet is not a great one, but if the appellee can evade the provisions of the ordinance by removing his house and relocating it twenty feet away from its former location, on like reasoning, why not two hundred or two thousand feet?

If appellee had sold part of his lot, and the purchaser had desired to buy and remove the house in question twenty feet nearer plaintiff, and relocate it upon the part of the lot so purchased, would anybody contend it would

not constitute a removal? We think it can make no difference as to whom the property upon which it is to be removed and relocated belongs. When the common council of the city defined the fire limits, it is presumed they did so with reference to the exact location of all the buildings within the limits.

In our opinion, the court erred in sustaining the demurrer to the complaint.

For this error, the judgment of the court below is reversed, and the cause remanded, with instructions to overrule said demurrer.

