CASE 27.—INJUNCTION BY THE HIGHLAND APARTMENT CO. AGAINST NETTIE C. O'BRYAN AND OTHERS TO ENJOIN THE BUILDING OF A STABLE IN VIOLATION OF BUILDING ORDINANCE.—Feb. 28.

# O'Bryan v. Highland Apartment Co.

Appeal from Jefferson Circuit Court; (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

From an order continuing a temporary restraining order defendants appeal—Affirmed.

1. Municipal Corporations—Police Powers—Prevention of Fires. —Under their police powers, municipalities may pass all reasonable rules and regulations necessary to prevent the spread of fires and to protect property within the corporate limits, subject only to the qualification that the rules and regulations must be reasonable, but, if reasonable, the wisdom of the regulation is not the subject of judicial investigation.
2. Constitutional Law—Police Powers—"Use and Enjoyment of Property."—So long as ordinances for the protection of property are reasonable, a citizen may not complain even though his unlimited and unrestricted use and enjoyment of his own property is to some extent abridged or denied by reason thereof, since the use and enjoyment of property guaranteed by the State and federal Constitutions mean such use and enjoyment as will not unnecessarily endanger or destroy the property of others.

O'Bryan v. Highland Apartment Co.

3. Municipal Corporations—Police Powers—Building Regulations to Prevent Fires—Ordinance—Construction.—Section 15 of a city ordinance denies the right of an owner to build, alter, or remove a building within the city limits without a permit from the building inspector. Section 65 prohibits the erection of a building of combustible material within the fire limits of the city, and within 60 feet of any permanent brick building, etc., without the written permission of the building inspector. Section 70 provides that wooden structures, not more than two stories high, and not more than 25 feet square, nor 28 feet in extreme height, may be erected without the fire limits of the city on the rear of a lot abutting a public alley and used for stable, etc. Held, that the three sections must be read together ,and that a building such as described in section 70 may not be built without a permit from the building inspector, nor within 60 feet of any permanent building, etc.

4. Same—Reasonableness of Regulations.—Section 64 of the ordinance unqualifiedly denies the right to erect any frame building within the city without a written permit from the building inspector, and absolutely denies the right to erect any frame building within the fire limits of the city. Held, that the sections referred to are not unreasonable regulations.

5. Injunction — Enforcement of Building Regulations — Parties Plaintiff—Property Owners.—A property owner may sue to enjoin the erection of a building in violation of the building regulations of a city.

6. Municipal Corporations — Police Powers — Building Permits— Revocation—Estoppel.—Where a building inspector issues a building permit in violation of an ordinance under a misstatement or misconception of the facts, the party procuring the permit without giving a full exhibit of the facts cannot complain because it is withdrawn or revoked.

7. Same—Statutory Provisions.—Under Ky. St. 1903, section 2861, giving the board of public safety exclusive control of the department of buildings, the building inspector is subject to the order and direction of the board, and, where complaint is lodged with the board, and on a hearing it is decided that the building inspector had no right to issue a certain permit, upon a showing that such a building as contemplated would be in violation of the building ordinances, the board may properly direct the permit to be canceled notwithstanding work has been commenced.

GIBSON, MARSHALL & GIBSON for appellants.
J. W. S. CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellee is the owner of a large stone and brick building, used as an apartment house, situated on Cherokee Road, in Louisville. The building occupies practically the entire lot owned by appellee, and runs from the street back to an alley. On the west of this building appellants own a lot which likewise runs from the street back to the alley. Upon a portion of their lot, fronting on the street, is a residence, in the rear of which is a frame stable. There is a vacant space or lot between appellant's residence and appellee's building. This space is 30 or more feet in width. Some time prior to December 6, 1907, appellants made application to the building inspector of Louisville for a permit to build a stable upon this vacant lot owned by her, and the permit granting her the right to erect a frame stable thereon was issued to her. Upon learning that such a permit had been issued, appellee protested and sought to have the building inspector revoke the permit. When his attention was called to the fact that the stable, as proposed to be erected, would be within less than 60 feet of appellee's apartment house, the inspector ordered that the work on the stable should be suspended pending investigation. Following the issuing of this order appellants applied for and secured a permit to erect a dwelling upon the vacant lot fronting on the street. Having secured a permit to erect a dwelling, appellants proceeded to build the stable, and appellee applied for and was granted a temporary restraining order, enjoining appellants from building the stable. Following the granting of this restraining order the

board of public safety, on application by appellee, took the matter up, and, after a hearing, directed the inspector to cancel the permit to build the stable, and, acting under this order, the permit was canceled by the inspector, and appellants notified of this fact. The temporary order was, upon hearing, continued in force, and the case is now brought before me seeking to have the injunction dissolved.

Four questions are raised: First, that the ordinances upon which appellee bases its contention are unconstitutional; second, that, if the ordinances are not unconstitutional, appellee has no right to maintain the action, but that it must be prosecuted in the name of the city; third, that the permit to erect the stable having been granted, and the work having been begun, it cannot thereafter be revoked; and, fourth, that the ordinances upon which appellee relies do not govern or regulate the character of building which appellants contemplated erecting.

Courts of last resort generally recognize the right of municipalities to pass all reasonable rules and regulations that may be necessary to protect the health and morals of the city, and to make such regulation as may be necessary to prevent the spreading of fires, and protect property within the corporate limits. The exercise of these functions on the part of the municipality is under the police power and the only restriction and limitation thrown around the act of the municipality in passing such ordinances is that they shall be reasonable. This principle was distinctly recognized by this court in the late case of Tilford, Building Inspector, v. Belknap, 103 S. W. 289, 126 Ky. 244, 11 L. R. A. (N. S.) 708, 31 Ky. Law Rep. 662, in which Judge Settle, speaking for the court, said: "It goes without saying that, in the exer-

cise of its governmental functions and under the police power, a municipality may enact ordinances for the safety of the public. * * * This includes the right to establish by ordinance rules and regulations to prevent the spreading of fires and for the protection of property within the corporate limits, but such rules and regulations must be reasonable." In 3 Cyc. p. 1062, this right of the city to pass such reasonable rules and regulations as are necessary for the protection of property is thus stated: "A city may by ordinance forbid the erection, alteration, or repair of buildings within certain districts or boundaries without denying the equal protection of the law, as such regulations are within the police power." This right, qualified only to the extent that the rules and regulations shall be reasonable, is now recognized by courts of last resort with such a degree of uniformity as to justify the conclusion that it is general. In determining whether or not the ordinances under consideration are unconstitutional, the only proper and legitimate subject of inquiry is: Are they reasonable? If they are reasonable, then the municipality clearly had the right, in the exercise of its police power, to pass them, and the wisdom of its so doing is not a subject of judicial investigation. The law presumes that in the enactment of public ordinances the municipality, through its legislative board, acts in good faith and for the best interests of its citizens; and therefore, so long as the ordinances are reasonable, a citizen may not complain, even though by reason thereof his unlimited and unrestricted use and enjoyment of his property is, to some extent, abridged or denied. The idea of absolutism in the use and enjoyment of our property has long since been exploded, and the now well-recognized doctrine is that that use

and enjoyment of our property guaranteed by the Constitutions, state and federal, means such use and enjoyment as will not unnecessarily endanger or destroy the property of others. The ordinances involved in this controversy are sections 15, 64, 65, and 70. Section 15 provides: "That no excavation shall be commenced, no wall, structure, building, part or parts thereof, or sign board exceeding ten feet in height, shall be built, constructed, altered, repaired or removed in said city until a permit has been issued for the proposed work by the building inspector." Section 64 provides: "No frame dwelling, building, or structure shall be erected in the city of Louisville without a written permit from the building inspector, and it is further provided that no frame dwelling, building or structure shall be erected within the 'fire limits' of the city of Louisville." Section 65 provides: "No frame, veneered, iron clad or any building the inclosing walls of which are constructed of combustible material, shall be erected, moved or remodeled within the 'fire limits' of the city of Louisville, or repaired when damaged to the extent of fifty per cent—exclusive of the foundation—of its value by fire or decay, and no such building shall be erected, or moved without the 'fire limits' of the city of Louisville within sixty feet of any permanent brick, stone, concrete or iron building, and no frame, veneered, or iron clad building erected beyond the 'fire limits' of the city of Louisville prior to the enactment of this ordinance and situated within sixty feet of any permanent brick, stone, concrete or iron building shall be enlarged, remodeled, moved or repaired when damaged by fire or decay to the extent of fifty per cent. exclusive of the foundation, of its value, without the written permission of the inspector of

buildings.'' Section 70 provides: ''That wooden structures not more than two stories high, the highest point of the roof not exceeding twenty-eight feet above the grade of the public alley, and not more than twenty-five feet square on the ground floor, may be erected on the rear of a lot at a point where such lot abuts the public alley and used only for servants' quarters, privy, stable, coal house, laundry, etc., without the 'fire limits' of the city of Louisville.''

It is conceded that the proposed building is located without the ''fire limits,'' but within the city limits, of the city of Louisville. In order that these four sections of the ordinances of the city of Louisville governing and controlling the erection of buildings within the city limits may be thoroughly understood, they must be read and construed together, for it is only in this way that the purpose, aim, and intent of the city government, in their enactment, can be arrived at. It will be observed that section 64 denies to the property holder unqualifiedly the right to erect any frame dwelling, building or structure within the city of Louisville without the written permission of the building inspector so to do, and denies absolutely the right to erect any frame dwelling, or structure within that portion of the city embraced within what is known as the ''fire limits.'' Section 15 denies the right of the owner to build, alter, or remove any building or signboard exceeding 10 feet in height anywhere within the city limits until a permit has been applied for and issued by the building inspector. Section 65 provides, among other things, that no frame, veneered, iron-clad, or any building, the inclosing walls of which are constructed of combustible material, shall be erected or moved without the ''fire limits'' of the city of Louisville, within 60 feet of any

permanent brick, stone, concrete, or iron building without the written permission of the building inspector. Section 70 provides for the erection of wooden structures for certain designated purposes on the rear of lots without the "fire limits," and, when considered by itself, this section would support the contention of appellants, but, when read in connection with sections 15, 64, and 65, the purpose and meaning of section 70 is clear. It is the duty of the building inspector to see to it that all proposed buildings within the city limits conform to the require ments of these ordinances, the first one of which is that no building, other than a signboard not exceeding 10 feet in height, shall be erected within the city limits unless a permit is first procured authorizing same. This, I take it, is not an unreasonable regulation. When we consider that in the growth and development of a city covering as in this case, a large territory, many buildings are necessarily at all times, during seasonable weather, in process of erection or construction, and, in order that the city may be enabled to protect its citizens against the ravages of fire, it is absolutely indispensable that the city authorities should know in advance the character of the building which any lot holder may propose to erect upon his premises. Now, when section 70 is read in connection with section 15 it is unnecessary, and would be surplusage, to have added thereto the provi sions of section 15, for, as above stated, they must be read together, and, when it is stated in section 15 that no building or structure shall be erected in the city until a permit is first procured so to do, it is wholly unnecessary to have this same subject-matter incorporated in each following section. Under section 70 a lot owner may, having first complied with the pro-

visions of section 15, erect on the rear of his lot a
frame building, provided his right to do so is not
denied by section 65, which must be read in connec-
tion with sections 15 and 70. Reading these three
sections together, and uniting them the one with the
other, as they must be in order to determine appel-
lants' rights, we have the following: A property
owner, living within the city of Louisville, and without
the "fire limits," having first procured a permit
allowing him to do so, may erect on the rear of his
lot, where said lot abuts on the public alley, a wooden
structure not more than two stories high, the highest
point of the roof not exceeding 28 feet above the
grade of the public alley, and not more than 25 feet
square on the ground floor, to be used for servants'
quarters, privy, stable, coalhouse, laundry, etc., pro-
vided said proposed structure is not within 60 feet
of any permanent brick, stone, concrete or iron build-
ing. By section 64 it will be observed that the
property owner is denied absolutely the right to build
any frame building or structure of whatever kind or
nature within what is known as the "fire limits."
This regulation is for the protection of the public—
for the general good of the city—and is based upon
the past experience of municipal authorities that in
the more thickly settled portions of a city, which are
the parts embraced within the "fire limits," fires
are prevented and controlled only by the exercise of
the most rigid rules and regulations, the most im-
portant of which is that which requires that all build-
ings and structures within such territory be con-
structed, as far as possible, out of incombustible
material. When these requirements are strictly ob-
served and enforced, and an adequate fire department
is maintained, the danger from fire, though still great,

is reduced to its minimum. Now, in the outlying districts of a city the danger from fire is not so great, for the reason that the buildings are not close together, and, as long as they are kept separated the one from the other, the danger of a conflagration in case of fire is lessened, but, as the city grows and develops, these outlying districts become built up and more thickly settled, structures of a more permanent character, built of more durable material, gradually take the place of temporary or wooden structures, and hence section 65 provides that no wooden structure shall be built even upon the rear of a lot within less than 60 feet of a permanent structure, the walls of which are constructed of some noninflammable material, such as brick, stone, concrete, or iron. I am of opinion that such regulations are not only not unreasonable, but are wise and highly beneficial to the general welfare and protection of the property and lives of the citizens of the municipality. Similar provisions have been approved and upheld in the cases of Eureka City v. Wilson, 15 Utah, 67, 48 Pac. 150, 62 Am. St. Rep. 904; Lemon v. Guthrie Center, 113 Iowa, 36, 84 N. W. 986, 86 Am. St. Rep. 361; Fire Department of New York v. Gilmour, 149 N. Y. 453, 44 N. E. 177, 52 Am. St. Rep. 748; Kaufman v. Stein, 138 Ind. 49, 37 N. E. 333, 46 Am. St. Rep. 368; First National Bank of Mt. Vernon v. Sarlls, 129 Ind. 201, 28 N. E. 434, 13 L. R. A. 481, 28 Am. St. Rep. 185.

The next question is: Has appellee the right to maintain this suit? Under the general principle that for every wrong there is a remedy, one, feeling himself aggrieved, has a right to go into court and have it determined whether or not he has cause for redress. Our court, so far as I am advised, has not passed upon this direct question, but it has been many times passed

upon by courts of last resort in other states. In the case of First National Bank of Mt. Vernon v. Sarlls, 129 Ind. 201, 28 N. E. 434, 13 L. R. A. 481, 28 Am. St. Rep. 185, it was held that an injunction would lie at the suit of a property holder to prevent the rebuilding or repairing of wooden buildings in violation of a municipal ordinance establishing "fire limits," etc., and, in the case of Kaufman v. Stein, 138 Ind. 49, 37 N. E. 333, 46 Am. St. Rep. 368, it was held that a property owner has a right to enjoin the removal of a wooden building to a place within the "fire limits," in violation of a city ordinance forbidding it. In the case of Griswold v. Brega, 160 Ill. 490, 43 N. E. 864, 52 Am. St. Rep. 350, it was held that neighboring property owners might enjoin one from moving a wooden building to a point within the "fire limits," in violation of an ordinance regulating such removal. In this last case it was held that property owners might enjoin, not only the one seeking to so remove the building, but might enjoin the city from issuing a permit authorizing it to be removed. These are well-considered cases, and there is good reason and common sense in the rule which permits a property owner who feels that his property is about to be injured, and that its danger and risk from loss by fire will be materially increased by the erection of the proposed frame building, to take such steps as are necessary to compel the one seeking to erect the building to do so in strict conformity with the reasonable rules and regulations of the city applicable thereto.

The contention of appellants that the permit to build, having once been issued, cannot be revoked, is not well taken. It is evident from the facts in this case that at the time the permit was issued either the

building inspector was not thoroughly familiar with his duties in the premises, or else he issued the permit under a misstatement or misconception of the facts. I am inclined to the opinion that the latter is the correct theory, for, as soon as he was notified that the proposed building was within 60 feet of a permanent structure, and therefore came within the inhibition of section 65, above quoted, he at once notified appellants to discontinue the work until an investigation could be made. Therefore the permit was issued without right or authority in law, and was in direct conflict with and a violation of the plain provision of the law, as set out in section 65, and, being so issued, if appellants procured the permit without giving to the building inspector a full exhibit of the facts, they cannot now complain because it is withdrawn or revoked. However, it appears in the record that this permit was ordered revoked and canceled by the board of public safety. Under section 2861 of the Kentucky Statutes of 1903, this board among other duties, has exclusive control of the department of buildings, and the building inspector is therefore subject to the order and direction of the board of public safety, and this board, complaint having been lodged with it, heard the right of the building inspector to issue the permit in question, and after a hearing decided that he had no such right, and directed the permit canceled. The board of public safety, having exclusive control of this department of the city government, being clothed with full power and authority to see that the ordinances governing and controlling and regulating the department of buildings were carried into effect, determined that this permit was improperly granted, and directed it to be canceled. I am of opinion that the board of

public safety in so doing acted clearly within the line of its duty, and, aside from this, I am of opinion that, if the building inspector himself on his own initiative had canceled this permit, appellants could not complain; for if he had a discretion in the matter, which he could exercise in granting the permit if he had exercised this discretion upon a mistake of fact, upon discovering that he had done so, he would clearly have a right to revoke the permit.

The fourth objection urged by appellants has already been answered in passing upon the first, wherein it is held that no building of any character, other than the erection of signboards, not exceeding 10 feet in height, can be conducted or carried on within the city limits unless a permit has first been procured so to do.

On the whole case, I am of opinion that the injunction should not be dissolved. In this conclusion I am joined by all my associates on the bench, except Judge O'REAR, who was not present, and Judge SETTLE, who, for personal reasons did not sit in the case.