## City of Monticello v. Bates.

(Decided March 21, 1916.)

### Appeal from Wayne Circuit Court.

1. Municipal Corporations—Powers of.—Municipal corporations may exercise, (1) those powers which are expressly granted; and, (2) those necessarily implied, or incident to those expressly granted, and which are indispensable to a proper exercise of the objects of the corporation.

2. Municipal Corporations—Ordinances—Fire Districts.—Ordinances creating fire districts in municipalities are upheld as being within the general police power.

3. Municipal Corporations—Creation of Fire Districts.—Under subsection 7 of section 3637 of the Kentucky Statutes, giving cities of the fifth class power to do and perform any and all acts necessary and proper to carry out the provisions of their charter, and to exact and enforce within the limits of such cities, all local, police, sanitary and other regulations as do not conflict with general laws, such cities have the power to create fire districts.

4. Municipal Corporations—Ordinances—Validity.—Municipal ordinances placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct of business, and must admit of the exercise of the privilege of all citizens alike who will comply with such rules and conditions, and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply.

5. Municipal Corporations—Buildings—Ordinances.—So much of the ordinance adopted by the city of Monticello in 1904 as prohibits any citizen from erecting any building within the city limits without the permission of its board of trustees, is invaild.

6. Municipal Corporations—Ordinances—Pleading.—When an ordinance is assailed upon the ground that it is illegal, unfair, unreasonable, or oppressive, the person complaining will ordinarily be required to point out specifically in what respect the ordinance is unreasonable, unequal or oppressive, as applied to the facts of his case.

GARNETT & VANWINKLE and O. B. BERTRAM for appellant.

E. T. WESLEY, HARRISON & HARRISON and DUNCAN & BELL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This is the second appearance of this case in this court. The opinion upon the former appeal may be read in 163 Ky. 38.

In 1905, the city of Monticello, by ordinance, fixed a fire district within its limits, providing that no permit should be granted to anyone to erect or repair any building within the fire district, except of brick or stone.

Claiming that a permit had been issued to Bates, in April, 1914, to build a brick veneered garage building within the fire district, and that instead of complying with the ordinance and the permit, he had erected a frame building within the fire district, the city filed this injunction suit, praying that Bates be either compelled to complete his building according to the terms of the permit, or that he be required to remove the building outside of the fire district; and, that he be enjoined from using or occupying it until one of said things was done.

A special demurrer to the petition, challenging the jurisdiction of the circuit court to grant relief by way of injunction, was sustained, and the first appeal was taken from that order. This court, however, reversed the judgment of the circuit court, sustaining the special demurrer, with instructions to overrule it, holding that the circuit court had power to grant the relief prayed, because the relief by prosecution in the police court was not adequate.

Upon a return of the case to the circuit court, the special demurrer to the petition was overruled. A general demurrer to the petition was likewise overruled. Defendant answered, traversing the allegations of the petition, and, in a second paragraph, he alleged that the ordinance fixing the fire district had been repeatedly

and continuously violated, for many years, by other persons building frame houses within the fire district, and for that reason he should be permitted to do likewise.

A demurrer to the second paragraph of the answer was carried back to the petition and sustained to that pleading; and from that ruling the city again appeals.

The opinion upon the first appeal was confined entirely to the question of the jurisdiction of the circuit court to prevent the violation of the ordinance by way of injunction, and concluded that the circuit court had jurisdiction to so proceed, because the remedy provided by the police court was inadequate.

Appellee now insists, however, (1) that the general council of the city of Monticello, a city of the fifth class, had no power or authority to enact the ordinance prescribing a fire zone, or to regulate or restrain the erection of wooden buildings therein, or to provide for their removal; and (2) that if it be determined that the council had the right to pass the ordinances in question, they are invalid because they fix no standard by which the action of the city council in granting or refusing its consent, is to be controlled, and places with the council the arbitrary and absolute power to grant or withhold permits, at its pleasure; and, for this reason, the ordinances violate both the state and Federal constitutions.

In order to properly consider these questions, a careful reading of the text of the ordinances is necessary.

The ordinance of 1904 reads as follows:

"Ordinance No. 16.

"The board of trustees of the town of Monticello, Ky., do ordain as follows: That no person shall erect any building or structure of any kind, or materially alter or repair any building or structure already within the town of Monticello, without the permission of the board of trustees of said town, to erect said building or to make said repairs. Any person violating the provisions of sect. No. one of this ordinance shall, upon conviction, be fined in any sum not exceeding one hundred dollars.

"Section Two. No permit shall be granted by the trustees for the erection of a building or structure or for materially altering or repairing the same until the party desiring to erect said building or structure or to repair the same, shall file with the town clerk an application for such permit and together therewith the plans and specifications of the proposed building or structure,

and any building or structure erected without the permission of the said trustees so to do shall be subject to removal by order of the trustees at any time within 12 months after the erection of such building or structure at the expense of the owner thereof.

"Section Three. No person shall recover any building or structure now erected in the town of Monticello with anything except tin, slate, iron or other non-combustible material, except by permission of the board of trustees. Any person violating the provisions of this section shall, upon conviction, be fined in any sum not exceeding one hundred dollars.

"Section Four. The town clerk shall receive a fee of twenty-five cents for each permit granted."

The second ordinance, No. 34, adopted in 1905, creating the fire district in question, reads as follows:

"An ordinance creating a fire district in the town of Monticello, Ky.

"The board of trustees of the town of Monticello, Ky., do ordain as follows: That a fire district be and the same is hereby established within the town of Monticello, Ky., to include the following boundary: Beginning at the southwest corner of the residence lot of W. C. Rogers, on North Main street to Michigan avenue; thence to include both sides of Michigan avenue to the mouth of the alley leading to Short street between the property of the Jones heirs and J. A. Brown; thence with said alley to Short street; thence to include both sides of Short street its entire length; thence with the public square, including all property adjacent to it to the beginning of South Main street; thence including both sides of South Main street to the mouth of the alley leading west between the warehouse of G. M. Hedrick and the residence of W. R. Cress; thence with said alley its entire length to Columbia street; thence with the alley leading north to the livery stable of S. Ragan & Son; thence with and including both sides of the street leading east to North Main street; thence with and including the west side of North Main street north to a point opposite the place of beginning.

"Section Two. The board of trustees of said town shall not grant a permit to any person or persons or corporation to erect or repair any building, except of brick or stone to be covered with a metal or slate roof,

within the boundary described in section one of this ordinance.''

In support of appellee's first objection, it is insisted that the municipality being purely a creature of the state, it possesses no powers or rights other than those that are conferred by the state.

After providing in sub-section 1 of section 3637 of the Kentucky Statutes that the city councils of cities of the fifth class shall have power to pass ordinances not in conflict with the constitution or laws of this state or of the United States, sub-section 7 of said section grants the further power:

''To do and perform any and all acts and things necessary and proper to carry out the provisions of this chapter, and to exact and enforce, within the limits of such city, all other local, police, sanitary and other regulations as do not conflict with general laws.''

It will be observed that the statute confers upon cities of the fifth class a broad power to enact and enforce all local, police, sanitary and other regulations as do not conflict with the general laws. It is true that the charter does not expressly empower the city to pass an ordinance prescribing a fire zone; but, if that power be implied, or incident to the primary power to enact all local, police or sanitary regulations not in conflict with the general laws, then the power exists.

In Simrall v. City of Covington, 90 Ky. 448, this court said:

''Municipal corporations may exercise, first, those powers which are expressly granted; and, second, those necessarily implied or incident to those expressly granted, and which are indispensable to a proper execution of the objects of the corporation. Their authority is not to be so strictly construed as to defeat the legislative intention; but if there be a fair and reasonable doubt of the existence of the power, it should be resolved by a court against the municipality.''

This principle was recognized in the late case of the District of Clifton v. Cummins, 165 Ky. 527.

And in O'Bryan v. Highland Apartment Co., 128 Ky. 282, the court expressly held that municipalities have the right, either expressed, implied, or as an incident to the power granted, to make such regulations as will prevent the spread of fire.

In that case the court said:

"Courts of last resort generally recognize the right of municipalities to pass all reasonable rules and regulations that may be necessary to protect the health and morals of the city, and to make such regulations as may be necessary to prevent the spreading of fires, and protect property within the corporate limits. The exercise of these functions on the part of the municipality is under the police power, and the only restriction and limitation thrown around the act of the municipality in passing such ordinance is that they shall be reasonable. This principle was distinctly recognized by this court in the late case of Tilford, Building Inspector, v. Belknap, 103 S. W. 289, 126 Ky. 244, 11 L. R. A. (N. S.) 708, 31 Ky. L. R. 662, in which Judge Settle, speaking for the court, said: 'It goes without saying that, in the exercise of its governmental functions and under the police power, a municipality may enact ordinances for the safety of the public. * * * This includes the right to establish by ordinance rules and regulations to prevent the spreading of fires and for the protection of property within the corporate limits, but such rules and regulations must be reasonable.' In 9 Cyc., p. 1062, this right of the city to pass such reasonable rules and regulations as are necessary for the protection of property is thus stated: 'A city may by ordinance forbid the erection, alteration, or repair of buildings within certain districts or boundaries without denying the equal protection of the law, as such regulations are within the police power.' This right, qualified only to the extent that the rules and regulations shall be reasonable, is now recognized by courts of last resort with such a degree of uniformity as to justify the conclusion that it is general. In determining whether or not the ordinances under consideration are unconstitutional, the only proper and legitimate subject of inquiry is: Are they reasonable? If they are reasonable, then the municipality clearly had the right, in the exercise of its police power, to pass them, and the wisdom of its so doing is not a subject of judicial investigation. The law presumes that in the enactment of public ordinances the municipality, through its legislative board, acts in good faith and for the best interests of its citizens; and, therefore, so long as the ordinances are reasonable, a citizen may not complain, even though by reason thereof his

unlimited and unrestricted use and enjoyment of his property is, to some extent, abridged or denied.''

This view was taken in the first opinion in this case, where we said:

.''Ordinances creating fire districts in municipalities are upheld as being within the general police power; they are designed to prevent the erection of inflammable buildings in congested districts, so as to lessen the danger from fire and conflagration to the adjoining and nearby property.''

In City of Richmond v. Dudley, 129 Ind. 112, 13 L. R. A. 587, the ordinance regulated the storing of petroleum, naptha, benzine, and like inflammable or explosive oils, and it was contended the council was without power to enact it.

The court, however, said:

''The subject covered by the ordinance in question is clearly within the police power conferred by the charter upon the municipality. Section 3155, Rev. Stat. 1881, provides that the common council of a city shall have power to make by-laws and ordinances not inconsistent with the laws of the state, and necessary to carry out the objects of the corporation. The danger to be apprehended from the storing of large quantities of inflammable or explosive substances within the limits of a city to life and property is so great as to invite legislative control of the same by the city government.''

The rule is stated in 28 Cyc. 741 as follows:

''The prevention of and protection against conflagration is generally recognized as an appropriate exercise of the police power by municipalities; and the enactment of ordinances establishing fire limits, and forbidding the use of inflammable materials in buildings or in the erection thereof within such limits have been uniformly sustained as proper methods of its exercise. While some courts hold that this power is inherent in a municipality, it nevertheless usually exists only by reason of an express grant or a necessarily implied statutory or constitutional delegation.''

Appellee relies, however, upon Arnold v. City of Stanford, 113 Ky. 852, and the United Fuel Gas Co. v. Commonwealth, 159 Ky. 34, as sustaining his view that the city had no power to pass the ordinances in question. We do not, however, so read those cases.

In the Arnold case, the court held that the city of Stanford could not locate a pest house within the city, for the reason, among others, that section 3909 of the Kentucky Statutes forbids the erection of a pest house for the treatment of eruptive or contageous diseases within the corporate limits of any city, or within a mile of the boundary thereof. In the face of that statute, the city of Stanford had no power to buy and locate a pest house within the city, as it proposed to do.

In the United Fuel & Gas Co. v. Commonwealth, *supra,* the city of Louisa had a contract with the gas company in the shape of a franchise by which the company obligated itself to furnish gas for public and private use, to the city and its inhabitants, at a price not to exceed one dollar per thousand cubic feet. The gas company, however, made five-year contracts with some of the citizens at twenty cents per thousand cubic feet, while it charged other persons, on shorter contracts, twenty-five cents per thousand cubic feet. To prevent this alleged discrimination, the council of the city of Louisa passed an ordinance prohibiting the gas company from charging one citizen more than another, and imposing a fine for every violation of the ordinance. But this court said the city council could not undertake to enforce its own contract by imposing a fine upon the other party to the contract.

This clearly appears from the opinion of the court, wherein it is said:

"There is nothing in the act giving the city any power to make ordinances imposing fines upon corporations who discriminate improperly between their patrons. The ordinance granting the franchise is a contract between the city and the grantee of the franchise; and one party to a contract cannot by his act impose a fine upon the other party for a violation of the contract in the absence of some legislative authority to do so."

While there is considerable discussion in the opinion in the United Fuel & Gas Co. case, *supra,* relative to the powers of cities of the fifth class, the gist of the decision is that the charter power to enact and enforce all local, police, sanitary and other regulations not conflicting with general laws, did not confer the power to enact an ordinance imposing fines upon corporations which discriminated improperly between their patrons, or confer the power upon a city to enforce its own contract by means of penal legislation.

From this examination of these two cases relied upon by appellee, we think it is obvious that they are not applicable to the case at bar, and are not controlling in this discussion.

We repeat, therefore, what was said in the first opinion in this case, that the appellant had the right under its charter to adopt the ordinance creating a fire zone, and regulating the erection of buildings therein. 2 Kent Com. 339; N. W. Fertilizing Co. v. Hyde Park, 97 U. S. 659; Clark v. South Bend, 85 Ind. 276.

2. But this further question arises: Are the ordinances unreasonable, and therefore invalid, upon the ground that they fix no standard by which the action of the city council is to be controlled in granting or withholding its consent, and place with the city council the arbitrary and absolute power to grant or withhold permits, at its pleasure.

The rule is well established that municipal ordinances placing restrictions upon lawful conduct or the lawful use of property must, in order to be valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilige of all citizens alike who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply. City of Richmond v. Dudley, 129 Ind. 112, 13 L. R. A. 589.

It will be noticed that ordinance No. 16 merely prohibits any person from erecting any building within the town of Monticello without the permission of the board of trustees, under penalty of a fine for a violation of the ordinance.

Section 2 of the same ordinance provides that no permit shall be granted by the trustees for the erection of a building until the party desiring to erect the building shall file his application with the town clerk, accompanied by the plans and specifications for the proposed building; and that any building erected without a permit shall be subject to removal by order of the trustees, at the owner's expense.

Section 3 of the ordinance relates to the repair and recovering of buildings theretofore erected within the city; while section 4 provides a fee of 25 cents to the clerk for each permit.

It will be noticed that this ordinance puts in the hands of the town council the absolute power of allowing or refusing the erection of a building of any kind within the city limits. There is no standard fixed by which it shall be determined whether the trustees shall permit a brick house to be erected, or a frame house not to be erected. The character of the house is given no effect by the ordinance; the decision in every case rests solely with the board of trustees.

We conclude, therefore, that under the rule requiring municipal ordinances to specify the rules and conditions to be observed in the conduct of business, in order to be valid, so much of ordinance No. 16 of 1904 as predicates any action thereunder solely upon the permission of the board of trustees, is invalid.

It does not follow, however, that ordinance No. 34, adopted in 1905, is invalid. It will be remembered that ordinance No. 34 contains only two sections; the first section merely fixes a fire zone by metes and bounds, while section 2 provides that the board of trustees shall not grant a permit to any person to erect any building, except of brick or stone, to be covered with a metal or slate roof, within the boundary of the fire zone.

The provision that no building should be erected within the fire zone except it be of brick or stone, to be covered with a metal or slate roof, means that a building of brick or stone, to be covered with a metal or slate roof, might be erected within the fire zone.

We have heretofore held in this opinion that appellant had the right to create a fire zone, and as section 2 of ordinance No. 34 specifies the character of buildings that may be erected within the fire zone, and is equally applicable to all persons, and is not to be controlled by the arbitrary decision of the board of trustees, it satisfies the rule above announced, and is a valid ordinance. It is radically different in its force and effect from ordinance No. 16, which provided, in substance, that no building of any kind should be erected within the town limits without the permission of the board of trustees. Under that ordinance there was no rule by which any man could exercise his right to build a house; it rested solely with the whim of the board of trustees.

Under ordinance No. 34, however, any man may erect a building of brick or stone, covered with a metal or slate roof, within the fire zone; and, if the board of

trustees should fail to give its consent, it could be required to do so.

Furthermore, the appellee cannot be heard to complain that the board of trustees has construed this ordinance so as to discriminate against him, for the reason that they granted him a permit to erect the building in question within the fire zone. He has in no way been harmed or unfairly treated; he cannot say any discrimination has been applied to him.

In Bradford v. Jones, 142 Ky. 820, this court said:

"When an ordinance is assailed upon the ground that it is illegal, unfair, unreasonable or oppressive, the person complaining will ordinarily be required to point out specifically in what respects the ordinance is unreasonable, unequal or oppressive, as applied to the facts of the case relied on by him. * * *

"When the aid of the court is invoked to declare a municipal ordinance void, it must clearly appear that it is inherently violative of the law or some of the well-settled principles that are generally recognized as limitations upon the power of municipalities in the enactment of ordinances."

Municipalities are given a wide discretion in the enactment of ordinances controlling and regulating the affairs of a town. LaGrange v. Overstreet, 141 Ky. 63; O'Bryan v. Highland Apartment Co., 128 Ky. 282.

This case does not fall within the rule announced by this court in Boyd v. Board of Councilmen of the City of Frankfort, 117 Ky. 199, and Yick Wo v. Hopkins, 118 U. S. 356, relied upon by the appellee.

In the Boyd case, *supra*, the ordinance provided that if any person should erect any building within the city limits, without the consent of the common council, and said building would be greatly injurious to adjacent property, and disturb the comfort, convenience, peace, and reasonable enjoyment of property by the neighbors, the person so erecting the building should be fined.

Under this ordinance it was attempted to prevent the colored people of Frankfort from building a church within the city limits. This court, however, condemned the ordinance, because it failed to fix a standard by which the action of the city council in granting or refusing its consent, should be controlled, and that under it the consent of the city council could be given or withheld, at its own arbitrary pleasure.

And the same was true in Yick Wo v. Hopkins, *supra.* In that case the ordinance prevented any person from conducting a laundry within the limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors, except the laundry be located in a building either of brick or stone.

It will be noticed that the California ordinance prevented a laundryman from carrying on his business in a frame building without having first obtained the consent of the board of supervisors. It was not a case involving a fire zone, but involved the right of a man to earn his living by conducting a lawful business. The ordinance was not adopted *bona fide* in the exercise of the police power; it was a mere pretense in that respect, aimed at the Chinese inhabitants of San Francisco.

In annulling the ordinance the Supreme Court of the United States held there was no reason for applying the police power to the location of a man's ordinary business, and that the idea that one man may be compelled to hold his life, or the means of living or any material right essential to the enjoyment of life, at the mere will of another, could not be tolerated.

It will be seen at a glance, we think, that neither the Boyd case nor the Yick Wo case militates, in any degree, against the validity of ordinance No. 34, in the case t bar.

Judgment reversed and action remanded, with instructions to the circuit court to overrule the demurrer to the petition, and for further proceedings.