## City of Louisville et al. v. Koenig.

May 8, 1942.

Lawrence S. Poston for appellant.

Curtis & Curtis for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 20, 1932, the appellee and defendant below, Frank Koenig, Sr., purchased two lots each 50 feet wide and running back 200 feet to an alley, and being parts of Block O, on the plat of Southern Heights, which plat was of record in the office of the county court clerk of Jefferson county, and likewise parts of Lot 6 on Block 2370, as shown on the maps of the assessor of the same city.

At its regular 1930 session, the General Assembly of the Commonwealth enacted Section 3037h-111 to and including Section 3037h-137, conferring authority on cities of the first class, to which Louisville belongs, to ordain and prescribe for planning and zoning, as prescribed by ordinance enacted within the authority conferred by the statute, and authorizing the city to designate districts and areas, and prescribe restrictions relating to the character of buildings to be erected on each area so designated, as well as the character of occupancy of such buildings, and, of course, inhibiting any violations of the ordinance both as to buildings and occupancy.

The lots of defendant by that ordinance were put in what is described as a "1-family" residence district, and with reference to the buildings that might be erected on

real property therein, the ordinance prescribed, not only the character of buildings that should be constructed, but restricted the area of the lot upon which they might be constructed. Other restrictions were enacted with reference to rear yards to the prescribed residences, and the particular part of their area which might be occupied by subordinate buildings necessary for the occupants or dwellers upon the lot, one of which it is admitted would be a garage, it being admitted that such a building is an accessory one to the residence. The ordinance also prescribed that no such accessory or subordinate building should occupy more than 30% of a prescribed backyard, etc., nor should it be built closer to the front line than 60 feet "nor less than 5 feet from any other street line or private garage."

In 1938 defendant applied to the proper city authorities as created by the statute—and the ordinance enacted pursuant thereto—for a certificate or permit to construct a garage on his property within all of the restrictions imposed by the ordinance, the dimensions of which were to be 20x30 feet, and such permit was given him. Before he commenced the construction of the building under his permit, he concluded to make it larger than the one he had applied for, and larger than the one designated in his permit, and to construct a building (which it is not disputed is suitable for garage purposes) 35 feet wide and 40 feet long, but which dimensions were still in conformity with and not in violation of any of the restrictions contained in the ordinance. Following that conclusion he orally applied to the same authorities for permission to enlarge the dimensions of his proposed structure, to conform to his altered conclusion, to which the authorities applied to consented, since the proposed alterations in the size of the structure would still be in conformity with the restrictions imposed by the ordinance. Accordingly the building was constructed with material not prohibited by the ordinance and in every other respect conforming thereto. However, after the building was completed defendant occupied it with some machinery for the manufacture of a laundry bleach which he sold to various customers on the market generally.

This action was thereafter filed by the city and its proper officers against him in the Jefferson circuit court, seeking to enjoin the continued business operation carried on by defendant in the structure he had erected

"and that defendant be required and directed and ordered to tear down, demolish and remove said garage from said lot of land." Upon trial (after evidence taken and the filing of exhibits and making of some stipulations) the court on submission sustained the prayer of plaintiff's petition and enjoined defendant from further or continued occupation of his building in the prosecution of any business enterprise, as he had theretofore done, but the court declined to require him to tear down or demolish the building so unlawfully appropriated by him, or to enforce any such order on his refusal to do so; and this appeal, prosecuted by the plaintiffs in the action, complains of that part of the judgment refusing such demolishment order as plaintiffs prayed for in their petition, and which is the only question presented by this appeal.

It does not become necessary in determining that question to enter into a discussion of limitations upon the right of zoning, and the extent to which restrictions may be imposed in such enactments. Volumes might be written on that subject, and for the purposes of this case it is sufficient to say that neither the statute nor the ordinance enacted thereunder, is attacked by defendant as being invalid. The authorities—both texts and opinions—also clearly establish the principle that courts may not interfere with the enactment or the enforcement of zoning provisions for the sole reason that they might be considered unwise by the courts, so long as their requirements may not be classified as unreasonable, which of course, means so long as there is an apparent legal reason for the enacted requirements imposed by such limitations. Nevertheless, courts will not sustain such an ordinance totally barren of possible reason for its enactment so as to make it "an unbridled license for municipalities to engage in any kind of restrictive legislation they may see fit or desire." The Law of Zoning by James Metzenbaum, Edition 1930, page 7. The same author follows the excerpt just made and on the same page, with this: "Unless a zoning ordinance can successfully meet the requirement of being reasonable in its application to any particular condition or situation, and unless it is enacted for the purpose of protecting the public safety, health or welfare, it can not be expected to meet with the approval of the courts."

We are called upon, therefore, to determine whether

the particular relief of demolishment of the building contended for on this appeal would or would not be reasonable or unreasonable within the admitted circumstances of the case as outlined supra. Of course, there is and could be no objection to that part of the judgment restraining defendant from the forbidden occupancy of his building, and which his counsel admit. Furthermore, it appears to be admitted by counsel for plaintiffs and appellants, that the involved structure was strictly in conformity with the zoning ordinance in every respect including material with which it was built; its relative location on the lot, and that it did not exceed in size and dimensions the limitations prescribed in the ordinance. Therefore, if defendant in applying for his authority to construct it had represented its final dimensions, there can be no doubt but that he would have been entitled to and given a permit for its construction in every respect exactly as it was eventually done. But, if he in that event had been refused such permit he no doubt could have enforced the issuing of one to him for such a building by a proper mandatory proceeding. Therefore, to require him to now demolish his building, or for the court to do so through an appropriate enforcement order, would be but the demolishment and destruction of a building in strict conformity with the ordinance, and which defendant could immediately reconstruct on the same spot—and, perhaps, with the same material, or salvage therefrom—and thus bring about the identical situation existing before the demolishment. It would, therefore, appear that the granting of such demolishing relief would not only be vain and futile (actions in which courts do not indulge) but it would also be unreasonable in that it would impose upon defendant the cost of demolishing the building, plus the additional cost of reproducing it in the identical condition and occupying the identical area as the demolished one.

Counsel for plaintiff insists upon the right of his clients as contended for on this appeal, upon the ground that the proof showed that defendant intended from the beginning to appropriate his building when constructed to the carrying on of the forbidden business in which he later engaged, and that pursuant to that intention he did engage in it, which intention (and later engagement pursuant thereto) counsel insists vitiated not only the permit issued to him but likewise rendered him amenable to all of the processes that might be employed against one

who had violated the restrictions of the ordinance. In other words, counsel's contention, when traced to its foundation, is made to rest solely upon the intention entertained by the property owner at the time he erects the involved building, although he may do so in strict conformity with the zoning ordinance. Such contention as so literally applied would be nothing less than the infliction of punishment for the entertainment of a mere unexecuted intention, which may or may not ever be carried out or executed. If, however, it should later be attempted to be carried out (as was true in this case) then the violation would consist, not in the original intention to so appropriate the building, but in actually engaging in the forbidden business therein and which in this case was punished and corrected by the injunction granted by the court preventing the further pursuit of the forbidden business, but which left in the possession of defendant his structure with the attendant right to appropriate it only for the uses and purposes permitted by the ordinance. Same counsel cites us to cases both domestic and foreign, which he insists sustain his criticism of that part of the judgment complained of on this appeal. The Kentucky cases cited and chiefly relied on are, O'Bryan v. Highland Apartment Co., 128 Ky. 282, 108 S. W. 257, 15 L. R. A., N. S., 419; Bates v. City of Monticello, 173 Ky. 244, 190 S. W. 1074; and Selligman v. Western & Southern Life Ins. Co., 277 Ky. 551, 126 S. W. (2d) 419.

A more or less lengthy list of cases from other jurisdictions are also cited and relied on, which we have examined as far as our limited time permitted, and in every one of the cases (and especially so with the domestic ones) the involved structures were themselves in nonconformity with the restrictions in the zoning ordinance, either because they were, or proposed to be, constructed out of a forbidden material, or they occupied or contemplated occupation of forbidden area, or proper adjustment to other buildings to which they were an accessory, or for some other reason contrary to the enacted restrictions. Not one of the cited cases so far as we have been able to learn uphold the right to abate the building on the theory that it is a nuisance as being in violation of the imposed restrictions, on the ground that the owner of the property entertained a forbidden intention at the time of obtaining his permit and his later construction of his building, in strict conformity with and in complete nonviolation of the zoning ordinance.

In the O'Bryan case the owner of the property was sought to be enjoined from constructing a stable, permit for which had been issued but later attempted to be cancelled, but which cancellation O'Bryan refused to recognize and constructed his stable which the conceded permit had given him the right, but when so constructed it would violate the restrictions in the statute relating to fire hazards because located within less than 60 feet of another structure. If the building in that case had been constructed in conformity with the requirements of the ordinance no just cause for complaint would exist. In the Bates case the ordinance forbid the construction of a building without a noncombustible exterior. Nevertheless, Bates constructed it solely out of wood, a combustible material, thus violating the restrictions of the ordinance. Likewise, in the Selligman case. In commenting on it, counsel say, "There (Selligman case) our building inspector issued a permit for the construction of a garage under misapprehension of facts, and such constituted a violation of the zoning ordinance." The property owner insisted that the correcting of the misapprehension on the part of the inspector could not thereafter be made, and proposed to construct his building, for which permit had been obtained, in accordance therewith and in violation of the zoning ordinance; but this court rejected that defense to an action to enjoin him from doing so. The question therefore involved, was the enforcement of the restrictions of the ordinance, and not the punishment of a secret intention on the part of the property owner to misappropriate his use of the building.

The foreign cases are of the same tenor, and as hereinbefore stated, we have been unable to find any decision sustaining the right of a municipality to abate or demolish a building constructed in strict conformity with a zoning ordinance when the only objection thereto is an entertained intention on the part of the property owner to appropriate it when completed to a purpose forbidden by the ordinance. The remedy for such intention and purpose, when attempted to be executed, is the stopping of its further prosecution by a preventive order of the court, if the property owner refuses to voluntarily abandon such misappropriation.

The position assumed and contended for by plaintiffs' counsel is therefore, simply this—that because de-

fendant entertained (and even executed that intent after completing the involved building) an intent to use it for a forbidden purpose he should therefore be precluded from using it for any purpose, although a permissible one under the zoning ordinance. As hereinbefore intimated, such a requirement, if expressly ordained in terms, would, according to our conclusion be unreasonable and, therefore, unenforceable.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole court sitting.