13 N.J. Super. 500 (1951)
80 A.2d 655
GEORGE A. DOLAN, ALICE DOLAN, ARCHIE H. ORMOND AND HELEN R. ORMOND, PLAINTIFFS,
v.
MICHAEL DeCAPUA, AND HELEN DeCAPUA, HIS WIFE, ROBERT T. WHITE, BUILDING INSPECTOR OF THE CITY OF EAST ORANGE, AND THE BOARD OF ADJUSTMENT OF THE CITY OF EAST ORANGE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 14, 1951.
*502 Mr. Archie H. Ormond, attorney for the plaintiffs.
Messrs. Giuliano & Giuliano (Mr. Anthony Giuliano appearing), attorneys for Michael DeCapua and Helen DeCapua, his wife.
Mr. Walter C. Ellis, attorney for Robert T. White, Building Inspector of the City of East Orange, and the Board of Adjustment of the City of East Orange.
DANIEL J. BRENNAN, J.S.C.
This is a proceeding in lieu of prerogative writ to review the action of the defendant Robert T. White, Building Inspector of the City of East Orange, in issuing a permit for the erection of a new six-car garage at 81 Warrington Place, and the approval of the action by the defendant board of adjustment, the plaintiffs herein *503 asking judgment that the action be reversed and that the defendants DeCapua be required to remove their garage.
Counsel for the plaintiffs now concedes that this court has no authority to order the defendants or some of them to remove the garage which was built under the permit.
The plaintiffs George A. Dolan and his wife reside at 73 Warrington Place, and the plaintiffs Archie H. Ormond and his wife reside at 64 Warrington Place.
The zoning ordinance of the City of East Orange was originally adopted in 1921, and subsequently amended and supplemented. As adopted, amended and supplemented this ordinance was received in evidence and marked as Exhibit D-1 in these proceedings. The ordinance established, inter alia, an area designated as "Small Volume Residence Districts" and enumerated in said designation the use of buildings or premises within that district. The section applicable to the consideration of the matter sub judice reads as follows:
"Section 3. Small Volume Residence Districts.
(a) Use. No building or premises within any district shown as a small volume residence district on the Use and Volume District Map shall be used for other than one or more of the following specified uses:
(1) Dwellings for one family only."
In addition to providing for dwellings for one family only there is then a catalogue of other uses which need no reproduction here since the categories are in no way pertinent.
Subsection (9) of section 3 of the ordinance provides for accessory uses customary or incident to the above uses and this section is indicative of what is considered an accessory use within the purview of the ordinance in the following language:
"(9) Accessory uses, customary or incident to the above uses. An accessory use shall not include a building or use not located on the same lot with the building or use to which it is accessory. A private garage to be deemed an accessory use shall not provide storage for more than one motor vehicle for each 2,000 square feet of ground area of the lot, and of which not more than one vehicle may be a *504 commercial motor vehicle of not more than two tons capacity. Space for not more than two non-commercial vehicles may be leased. The same regulations as for garages shall apply to private stables except that one horse and one wagon shall be considered the equivalent of one motor vehicle. The term `accessory use' shall not include a business outside of the building to which it is accessory nor which occupies the floor area in excess of 25 per cent of the floor area of one story of such building or which by the character of the building or premises or the emission of odor, smoke, dust or noise, or in any other way is objectionable or detrimental to the amenity of the neighborhood, except that a private garbage incinerator for family use shall not be prohibited."
The properties of the plaintiffs and defendants DeCapua are located in the aforesaid Small Volume Residence District as established by the zoning ordinance of the City of East Orange and shown and delineated on the Use and Volume District Map made a part of said ordinance. On each of these properties in this district is located a one-family dwelling.
Historically it appears that on December 14, 1949, in behalf of the defendants DeCapua, written application was made to the acting inspector of buildings of the City of East Orange for a permit for the erection and construction at 81 Warrington Place, East Orange, of a new building for a six-car garage. The application as filed indicated that there was then on the lot at said address a building consisting of a frame garage and a residence. Counsel for DeCapua urges that the six-car garage is being put to a use similar to that of the former two-car garage, the latter being the "frame garage" referred to in said building permit application.
In the application, Exhibit P-5, DeCapua indicated that this new garage building would "be built as per code of E. Orange Bldg. Dept. and as plans filed." The application as thus presented was received, filed and endorsed as approved by the defendant White, who was then the acting building inspector of the City of East Orange. On the same day the acting building inspector issued Building Department Permit No. 39197 for a "new 6-car garage" to be located at 81 Warrington Place. The permit contained the recital that *505 "No building to be occupied before certificate of occupancy is obtained." One of the grounds urged by the plaintiffs for the relief here sought in these proceedings is that "No certificate of occupancy, such as is required by Section 13 of the Zoning Ordinance, has been issued for said six-car garage since its completion." The permit was issued without notice to any property owner.
My examination of the application for the permit as well as the permit itself fails to disclose the proposed use to which the new garage was to be put. All that the application and the building permit disclose is that the new building was to be constructed as a garage for six cars. It appears, however, from the evidence presented to me and from the pretrial order, that this new six-car garage is being used to house motor vehicles and limousines customarily furnished for funerals, weddings, and similar functions. The problem for resolution is whether or not this use is a customary use as intended by the zoning ordinance.
The defendants DeCapua and the defendant building inspector, as well as the board of adjustment, deny that the garage erected by the DeCapuas on the subject premises is in violation of the zoning ordinance and aver that the garage premises are not being used for the parking and storage of automobiles in violation of the zoning ordinance.
It is conceded by all the parties to this litigation that the new garage was completed on January 11, 1950; that no certificate of occupancy was issued for said garage; that since the completion of the garage it has been used to house six limousines licensed as auto-cabs or omnibuses, and in addition a two-car garage on the premises at 81 Warrington Place has been used to house two flower cars, also licensed as auto-cabs or omnibuses, and that the said eight limousines or flower cars are now housed on said premises.
It should be observed in passing that copies of the applications to the State Department of Motor Vehicles for licenses for the several vehicles indicate clearly that they are applications for omnibus vehicle registration (Exhibit P-4).
*506 Plaintiffs appealed to the board of adjustment with reference to the issuance of the building permit and a hearing was held by that board on May 18, 1950, at which testimony was taken and exhibits offered and marked in evidence. On May 31, 1950, the board dismissed this appeal. The summons in the cause together with a copy of the complaint were served upon the defendants on June 13 and June 14, 1950, respectively.
The matter is now before this court for determination on the basis of the pleadings filed herein, the testimony, and the exhibits offered, as well as the arguments of respective counsel appearing in behalf of the parties hereto.
It is elementary that although municipalities have power to adopt zoning regulations by ordinance, the regulations must be in accordance with a comprehensive plan designed to promote specified statutory purposes relating generally to the health, safety and welfare of the community. R.S. 40:55-32; Crow v. Westfield, 136 N.J.L. 363, 365 (Sup. Ct. 1948). In exercising this power the municipality may be divided into districts of such number, shape and area as may be best suited to carry out the zoning purposes. R.S. 40:55-31. Zoning ordinances may be enlarged or otherwise altered by amendment thereof, provided always that the action is in reasonable fulfillment of the statutory policies. Taylor v. Hackensack, 137 N.J.L. 139, 141 (Sup. Ct. 1948); Appleby v. Bernards Township, 128 N.J.L. 195 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942).
There is suggested in the arguments of counsel appearing for the defendants herein that the present new garage is being put to the same use and purpose that this subject property was being used for while the two-car garage only was on these premises, for that for a long period of time prior to the erection of the new garage, the two-car garage had been put to this similar use. This argument is untenable as reflective of the rights of the defendants here.
It has been held in Meixner v. Board of Adjustment of the City of Newark, 131 N.J.L. 599 (Sup. Ct. 1944), that an *507 owner of premises which, at the time of the adoption of a zoning ordinance, were used for non-conforming uses, is within his rights in continuing such use, and he may repair or restore buildings in which such use existed, but he may not enlarge the use. (The emphasis is the court's.) This case is cited with approval in Lynch v. Hillsdale, 136 N.J.L. 129, at page 133. (Sup. Ct. 1947) In the latter case it was held that "A pre-existing non-conforming use may not be enlarged or radically modified simply because the new use would be `no more harmful' than the old to the adjacent land owners."
Counsel for the defendants building inspector and board of adjustment of the City of East Orange urges that this court does not have jurisdiction over the subject matter and cites in support thereof Rule 3:81-14 which, in the opinion of this court, is not applicable. Fischer v. Twp. of Bedminster, 5 N.J. 534 (1950). Counsel further indicates that there is no prohibition against a complaint being filed in the municipal court by any citizen charging a violation of said zoning ordinance. This is quite beside the issue. Plaintiffs seek by this proceeding not to prosecute a violation of the zoning ordinance in order to have a penalty imposed, but to review the action of the building inspector in granting the permit and the resolution of the board of adjustment in approving the issuance thereof, pursuant to Rules 3:81-2 and 3:81-3. They complain that the permit should not have been issued in the first instance.
One of the defenses urged in behalf of the defendants herein is that the plaintiffs are guilty of laches in the institution of this suit. As of the date of the instant proceedings there was no period of limitation prescribed which was legally valid so as to give rise to the suggestion of laches here. Winberry v. Salisbury, 5 N.J. 240 (1950); Fischer v. Twp. of Bedminster, supra. For the reasons reflected in the testimonial record the court does not conceive that in any event there was any laches on the part of the parties plaintiff. Our Supreme Court did, on March 15, 1951, promulgate a *508 rule imposing a limitation on the bringing of certain proceedings, included in which is a provision directing that no proceeding in lieu of certiorari shall be allowed "to review any decision of * * * board of adjustment after thirty days from the date of the filing of the decision in the office of the Board * * *." Rule 3:81-15, adopted March 15, 1951. That rule as adopted has no application to the instant proceeding.
From the entire record before me it appears that since the completion of the new garage it has been used to house limousines licensed as auto-cabs or omnibuses. The pretrial order so reflects. When the application was presented to the building inspector he then knew that the new garage was to be used to house these limousines. When he inspected these premises in March, 1950, he knew that the subject property was actually being used to house these autos, customarily used for hire as aforesaid. It is also conceded that no certificate of occupancy was ever issued for the new garage. It is admitted that the premises of the plaintiffs and that of the defendants are within the Small Volume Residence District which, as indicated, provides for dwellings for one family only and such "accessory uses" customary or incident thereto. "Accessory and customarily incidental use comprehends not only the kind but the degree of use." Appeal of Lord (Appeal of Borough of Munhall), 168 Pa. Super. 299, 77 A.2d 728, at page 731 (Pa. Super. Ct., decided January 12, 1951). The maintenance of a garage housing limousines, used for hire and licensed as auto-cabs or omnibuses, is neither an "accessory use" nor a use "customary or incident" to a one-family housing accommodation. It cannot be classed as a use accessory to the permitted uses. It is my opinion that the zoning ordinance never contemplated such a use in this Small Volume Residence District. To hold otherwise would nullify the intendment of the ordinance. The use of the new garage involves the conduct of a business whose operation is prohibited. The express mention of permitted uses impliedly excludes all others. The present use bears no *509 relationship whatever to the occupancy of the dwelling on the subject premises. The zoning ordinance was designed generally to safeguard the health and welfare of the community. Since the use of the new garage is not one customarily incident to the occupation of a single-family residence it falls within the prohibition of the ordinance. Vide by analogy Sullivan v. Anglo-American Inv. Trust Inc., 193 A. 225 (N.H. Sup. Ct. 1937); City of Louisville v. Koenig, 290 Ky. 562, 162 S.W.2d 19 (Ky. Ct. of Apps. 1942).
The action of the board of adjustment and that of the building inspector under review is reversed, set aside, and for nothing holden. There will be judgment accordingly in favor of the plaintiffs and against the defendants, but without costs.
Submit order.