J. E. JOHNSON III et al., Appellants,

v.

David C. LAGREW et al., Appellees.

Court of Appeals of Kentucky.

Nov. 7, 1969.

F. Selby Hurst, Thomas H. Burnett, Hurst & Burnett, Lexington, for appellants.

Weldon Shouse, Lexington, Richard S. Smith, Corp. Counsel, Lexington, for appellees.

STEINFELD, Judge.

J. Lindsay Nunn and his wife applied for a zoning change from A–1 (Agricultural) to B–5 (Business Interchange Service District) for 18.5 acres of land at the northeast corner of Interstate 64–75 and the Newtown Road in Fayette County, Kentucky. The application was rejected on December 23, 1965, by the city-county planning commission. No appeal was taken from that decision and it was not submitted to a legislative tribunal.

On March 2, 1967, the planning commission adopted a land-use plan encompassing the Nunn property. KRS 100.183; 100.187 (2). Gilmore N. Nunn, the son of the original applicants and their successor in land ownership, applied on April 19, 1968, for the same zoning change which had been requested by his parents, except that the change embraced 20.61 acres. Between the date when the first application was rejected and before there was any action taken on the second application, the land was annexed by the City of Lexington. A majority of the members of the planning commission voted to recommend to the city commission (Lexington's legislative body) that the request be granted. On June 27, 1968, the city commission adopted an ordinance changing the classification of the Nunn property from A–1 to B–5. The appellants, who were property owners and residents of the vicinity of the property rezoned and certain public officials of Fayette County, Kentucky, brought an action in the circuit court attacking the change. They offered the record on the

1965 zoning application as evidence to sustain their claim that the 1965 denial was res judicata to the second proceeding, but the court rejected it. After making findings of fact and reaching conclusions of law it dismissed the proceedings. The same appellants below have appealed here. We affirm.

Before the interstate highway system was constructed in that area J. Lindsay Nunn and his wife owned a small farm facing the Newtown Pike (now Road), approximately two miles from the City of Lexington, Kentucky. Mr. and Mrs. Alfred Marks owned the farm to the south, the Maine Chance Horse Farm was directly across the pike and adjoining that horse farm was the famous Cold Stream Farm. Later interstate highways I–64 and I–75 were constructed so that they joined for a short distance in that area, one going east-west and the other north-south. They crossed the Newtown Pike dividing the Nunn, the Marks and the two horse farms. The Newtown Pike was changed from a two-lane, hard-surface county road to a four-lane express highway leading from downtown Lexington to the Newtown Pike interchange.

The record made at the second planning commission hearing showed that approximately 28,000 vehicles traverse the interchange every 24 hours, that the Marks property had been developed with a large Holiday Inn motel and service complex and that the University of Kentucky had purchased the two horse farms. It also showed that the property had available to it all municipal services including sewage, water, gas, electricity, city police and fire protection and city garbage collection.

For an understanding of the contentions which we will discuss we think it proper to quote and comment on certain zoning statutes. The procedure provided by Chapter 100 of the Kentucky Revised Statutes before June 16, 1966, was not uniform throughout the state. These provisions were repealed, new ones were enacted, and

thereby uniformity was created. The application of J. Lindsay Nunn and his wife had been filed under KRS 100.420 while the one by Gilmore N. Nunn was submitted under KRS 100.211. The now repealed KRS 100.420 provided that:

"Any regulations, restrictions or boundaries established by the commission may from time to time be amended or repealed. No change shall be made unless the change is approved by a majority vote of the entire membership of the commission and the ordinance or resolutions adopting the change is approved by a vote of not less than a majority of the entire membership of the legislative body."

KRS 100.211(1) reads:

"(1) A proposal for amendment to any zoning regulation may originate with the planning commission of the unit, with any fiscal court or legislative body which is a member of the unit, or with the owner of the property in question. Regardless of the origin of the proposed amendment, it shall be referred to the planning commission before adoption. The planning commission shall then hold at least one public hearing after notice as required by KRS Ch. 424 and make recommendations to the various legislative bodies or fiscal courts involved, and it shall take a majority of the entire legislative body or fiscal court to override the recommendation of the planning commission."

KRS 100.213 reads:

"Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the community's comprehensive plan, or, in the absence of such a finding, that one or more of the following apply and such finding shall be recorded in the minutes and records of the planning commission or the legislative body or fiscal court.

(1) That the original zoning classification given to the property was inappropriate or improper.

(2) That there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area."

The owners of the subject land moved to dismiss the action in the circuit court for the reason, among others,[1] that the plaintiffs there had not filed a certified copy of the ordinance granting the change. Relying upon KRS 100.347, they insist that such filing was a prerequisite and jurisdictional to a hearing.

KRS 100.347 provides:

"Any appeal from commission action may be taken in the following manner:

(1) Any person or entity claiming to be injured or aggrieved by any final action of the planning commission or board of adjustments may appeal from the action to the circuit court of the county in which the land lies. Such appeal shall be taken within thirty days after the final action of the commission or board. Final action shall not include commission's recommendations made to other governmental bodies.

(2) All appeals shall be taken in the appropriate circuit court within thirty days after the action or decision of the planning commission or board of adjustments and all decisions which have not been appealed within thirty days shall become final. After the appeal is taken the procedure shall be governed by the rules of civil procedure. When an appeal has been filed, the clerk of the circuit court shall issue a summons to all parties, including the planning commission in all cases, and shall cause it to be delivered for service as in any other law action."

Appellees cite Oertel v. Louisville & Jefferson County Planning & Zoning Commission, Ky., 251 S.W.2d 275 (1952), but Oertel was based upon KRS 100.057 (since repealed), which authorized appeals from decisions of planning and zoning commissions directly to the circuit court. The present suit was not, and could not have been an appeal from the action of the planning commission. KRS 100.347 which authorizes certain appeals, states that they may be taken from the " * * * final action of the planning commission * * *" but that "Final action shall not include commission's recommendations made to other governmental bodies." Here the attack was on the ordinance adopted by the legislative body of the City of Lexington. There is no statutory requirement that a certified copy of the ordinance be filed.

■ There are now and were no provisions in Chapter 100 authorizing an appeal from the action of a legislative body, but we have recognized that a direct attack for unreasonableness or arbitrary action was available in a zoning proceeding to the party aggrieved. City of Louisville v. Koenig, 290 Ky. 562, 162 S.W.2d 19, 140 A.L.R. 1369 (1942); Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782 (1944); City of Louisville v. Puritan Apartment Hotel Co., Ky., 264 S.W.2d 888 (1954); American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm., Ky., 379 S.W.2d 450 (1964) and Puryear v. City of Greenville, Ky., 432 S.W.2d 437 (1968).

■ Alternately, the motion to dismiss was bottomed on the additional claim that if the statute did not require the appellants to file a certified copy of the ordinance that duty was imposed by CR 72.01 which provides that on appeals from a lower court to a higher court the appel-

---

1. There was no contention that the second application was filed an unreasonably short time after the first one.

lant must file a certified copy of the judgment. Appellees rely on Bullitt County v. Stout, Ky., 422 S.W.2d 133 (1967), which is not in point as it involved an appeal under KRS 23.030 to the circuit court from an order of a fiscal court. CR 72.01 is not applicable to an independent action attacking the zoning action of a city commission. The court did not err in refusing to dismiss the proceedings because of the failure of appellants to file a certified copy of the ordinance.

Appellants contend that the trial court erred in not adjudging that the action of the city commission was contrary to law because the decisions on the application of October 27, 1965, and on the application of April 19, 1968, were substantially based on the same facts, therefore, the decision on the 1965 application was res judicata to the 1968 application. Furthermore, they say it was "arbitrary for the commission to reach a different decision on the 1968 application from its decision on the 1965 application, since both applications were based on substantially the same facts."

Counsel for appellants admit that they are unable to find decisions of this court " * * * related to inconsistent decisions on the same facts by a zoning board, * * * " but they rely on Webb Transfer Line, Inc. v. Jones, Ky., 379 S.W.2d 444 (1963), the cases cited therein, and Cardinal Bus Lines v. Consolidated Coach Corporation, 254 Ky. 586, 72 S.W.2d 7 (1934), which applied the doctrine of res judicata to administrative bodies. Those cases did not involve commissions whose power was only to recommend as was the situation here. KRS 100.211(1) and KRS 100.420 (repealed).

Appellants also rely on Lambert v. Seabold, 246 Md. 562, 229 A.2d 116 (1967); Whittle v. Board of Zoning Appeals, 211 Md. 36, 125 A.2d 41, 71 A.L.R.2d 1353 (1956); Woodlawn Area Citizens Assn.

v. Board of County Com'rs, 241 Md. 187, 216 A.2d 149 (1966); and Polinger v. Briefs, 244 Md. 538, 224 A.2d 460 (1966). They call our attention to language in Whittle which said:

"This rule seems to rest not strictly on the doctrine of res judicata, but upon the proposition that it would be arbitrary for the board to arrive at opposite conclusions on substantially the same set of facts and the same law."

The Maryland cases do not sustain appellants' claim of res judicata, but indicate that a change of position by the board may sustain a charge of arbitrary action.

Appellees contend, without merit, that we should not consider this argument which " * * * they now raise for the first time in their brief before this Court." The complaint alleged arbitrariness and appellants sought to file in evidence " * * the certified copy of the proceedings of Lindsay Nunn * * * for the purpose of establishing the theory of the plaintiffs that no change of condition had occurred justifying the zone change at issue in this litigation."

We find nothing in our zoning statutes and we are referred to no regulation which prohibits successive applications for amendments to the zoning plan. Important also is the fact that the city commission of Lexington had never before considered this matter and that there had been a drastic revision in the zoning laws, between the time the application of J. Lindsay Nunn was rejected and the second one came before the city commission.

We hold that " * * * the action taken * * * on a previous application for rezoning does not prevent it (a governing body) from reconsidering the matter and entertaining another application * * *." 101 C.J.S. Zoning § 104, p. 859.[2]

---

2. In Leutenmayer v. Mathis, Ky., 333 S.W. 2d 774 (1959), we held a previous *judgment* not to be res judicata where the parties and part of the land were not identical.

 The Gilmore N. Nunn application showed that a request for a change of zone was made and denied about 18 months previously. The record of the J. Lindsay Nunn proceeding contains nothing which would have supported a finding by the trial court that the enactment of the amending ordinance was arbitrary or unreasonable. Refusing to consider that record as evidence, if an error (which we do not hold), certainly was not prejudicial, therefore, this claim is not a basis for reversal. CR 61.01.

 The trial court found that the property " * * * is located within the city limits of * * * Lexington, and either has or has immediately available all urban services * * * that (it) is adjacent to business property and adequately fulfills all requirements for Interchange Service Use (B–5) as defined in * * * the Zoning Ordinances for * * * Lexington as adopted on August 18, 1966." It also noted that " * * * the legislative body received from the Lexington Fayette County Planning Commission a recommendation that the original zoning of this property as Agriculture (A–1) was inappropriate and that the proper zone classification should be Interchange Service Use (B–5)." Such findings clearly refute the charge that the city commission acted in an arbitrary or unreasonable manner.

 Lastly, appellants complain that they were not afforded " * * * procedural due process * * * " in that the planning commission failed to fully comply with the provisions of KRS 100.213(2). They say that the "decision" of the planning commission cannot be justified on a change of condition since it made no finding of fact of such a change. The minutes of the city commission show that before the adoption of the ordinance the annexation of the property to the city, the availability of urban services and the fact that it could only be used for highway services were discussed. We are of the opinion that

there was substantial compliance with KRS 100.213(2).

The judgment is affirmed.

All concur, except REED, J., who is not sitting.