## Bates v. City of Monticello.

(Decided January 16, 1917.)

### Appeal from Wayne Circuit Court.

1. Municipal Corporations—Prescribing Fire Limits.—It is competent for a city of the fifth class to prescribe fire limits and to make reasonable regulations as to the character of buildings which may be erected therein, and to prohibit the erection of any such building without a permit so to do. But it may not arbitrarily prevent the erection of any character of building without permission of the city council, and such ordinance enacted within the permissible limits is not an arbitrary deprivation of the citizen of any of his rights without due process of law.

2. Appeal and Error—Practice.—Questions presented and passed upon in the final judgment of a case are conclusive between the parties upon a subsequent trial, but this rule applies only to the facts which were presented or which may have been presented by the condition of the record at the time the judgment appealed from was rendered, and it does not prevent the raising of questions which under the practice of the forum follows in regular sequence the time when such judgment was rendered.

3. Municipal Corporations—Ordinances—Pleading.—Where an ordinance upon its face raises the question as to its validity because of the subject matter dealt with, an adjudication upholding its legality is conclusive, and the party attacking it may not afterward raise the same question by pleading the facts constituting its alleged illegality.

4. Municipal Corporations—Ordinances—Evidence.—An ordinance regular upon its face will be prima facie presumed to be regularly and legally passed. But this presumption may be overcome by allegation and proof to the contrary, the burden being upon the one seeking to overcome it.

DUNCAN & BELL and J. P. HARRISON for appel[

O. B. BERTRAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This case is no stranger to this court. It began its visits about two years ago, and has continued them as regularly and as frequently as the law would permit. What we said about it on the first occasion will be found in the case of City of Monticello v. Bates, 163 Ky. 38, and the entertainment which we gave it on the second occasion is reported in same styled case, 169 Ky. 258. The matters involved, as well as the facts in the case, will be found fully stated in those two opinions; but, briefly, they are that the city of Monticello is one of the fifth class, and in 1904 it passed an ordinance, known in this record as No. 16, which was supplemented or amended by another one passed in May, 1905. Each of these ordinances is set out in the second opinion.

The first ordinance was directed toward preventing the erection or construction of any building within the limits of the city without permission of the city council to do so. This also included the repairing of any building within the corporate limits of the city and imposed a fine for the violation of the ordinance. Section 3 of the first ordinance specified the material with which newly constructed roofing should be made, and provided that it should not be made with other than non-combustible material.

The second ordinance prescribed a fire limit within the city, and provided that no building should be erected or repaired "except of brick or stone to be covered with a metal or slate roof," within such boundary. After the passage of the second ordinance, the appellant, who is the defendant, applied to the city council for a permit to construct within the defined fire limits a building to be used as a garage. In the application he made specification of the building which, omitting dimensions, was to be a veneered brick building with a metal roof. This permit was given by a written order entered upon the minutes of the council proceedings. Both the application and the permit will be found copied in full in the second opinion, *supra*. The building was constructed according to the dimensions specified in both the application and permit, but its outside was not covered with the non-combustible material mentioned in the application or permit. On the contrary, it was of wood, and, therefore, combustible material.

The ordinances provided the imposing of a fine of $100.00 upon any one who might violate them. The

city, desiring a more effectual remedy than a prosecution, filed this suit to force the defendant by proper process of law to remodel his building so as to comply with the permit, or, if he should fail within a reasonable time, to require him to remove it out of the fire limits.

A special demurrer was filed to the petition upon the ground that the circuit court had no jurisdiction, as this was possessed exclusively by the police court of the city. This position was taken because, as was contended, the rights of the parties grew out of an ordinance of the city, the enforcement of which, and all rights growing out of it, is given exclusively to the jurisdiction of the police court. The special demurrer was sustained, and upon appeal that judgment was reversed by the first opinion from this court, *supra*.

Upon the return of the case the defendant filed an answer consisting of two paragraphs, the first of which was a denial that the ordinances were duly or at all passed, or that they had at any time been in force or effect. It was admitted in this paragraph that the building had been constructed in the manner complained of. In the second paragraph it was attempted to be shown that since the passage of the ordinances, especially the one creating the fire limit, the city had on divers and sundry occasions and almost continually acquiesced in and permitted constant violations of said ordinances, and that to enforce them against the defendant would be an undue and unjust discrimination against him, and that the city by its alleged conduct was estopped from insisting upon an enforcement of the ordinances mentioned.

Later, and on December 3, 1915, an amended answer was filed, in which the defendant alleged that by reason of the facts set up in the second paragraph of his original answer he was led to believe and did believe that the city would not attempt to enforce the ordinance against him and would not require him to erect his building in accordance with the provisions of the ordinances, and that he so believed and in good faith constructed the building as it is, and that the city is, therefore, estopped from insisting on an enforcement of the ordinances against him. A demurrer was filed to the answer as amended, which, upon motion of the defendant, was carried back to the petition, and being sus-

tained, the petition was dismissed, from which judgment the second appeal was prosecuted by the city, the opinion therein being the second case, *supra*.

After the return of the case following the second opinion the demurrer to the petition, in obedience to the mandate of this court, was overruled, and the defendant filed his second amended answer on July 4, 1916, in which he attacks the validity of the two ordinances in this language:

"1st. That said ordinances were not published as required by law, in that they were not published at least once in a newspaper published in the city of Monticello or written or printed and posted in at least three public places therein.

"2nd. That said ordinances were not passed by the votes of three members of the city council."

A third paragraph of this last amended answer attacked the constitutionality of the ordinances: "In that they undertook to deprive him of his property without due process of law by vesting in the said council the arbitrary and unlimited power and authority to prevent the defendant from erecting on his own land any sort or character of building, however safely constructed and of whatever material built, without first securing the permission of the said council so to do." A demurrer was then filed by the city to the answer and to all of the amendments, which was sustained by the court, and the defendant declining to plead further a judgment was entered requiring him to either complete the building so as to conform to the ordinance and permit given him to construct it, or to remove the building from the fire limits of the city on or before November 1, 1916, and to reverse that judgment the case is again before us on this appeal.

The trial court rendered no opinion, but we gather from the briefs that his judgment sustaining the demurrer was because the validity of the ordinances had been adjudicated by the former opinions, and that they were no longer open to attack by the defendant. The error in this position is that neither of the previous opinions of this court dealt with any of the facts presented by the answer, or any amendment thereto, except those shown by the petition and by the contents of the ordinances, both of which were copied into the petition and certified copies of them filed with it. Only

such facts as thus appeared, with the law arising therefrom, were adjudicated by the former opinions. If any such facts or legal deductions are attempted to be relied upon by the responsive pleading, they are not open to the defendant under the well recognized rule of universal application that a final adjudication between the same parties in the same case is conclusive, whether such adjudication be sound or unsound. Mutual Benefit Life Insurance Co. v. Emig's Admr., 145 Ky. 660; Junior Order United American Mechanics v. Ringo, 146 Ky. 602; Upton's Committee v. Gaddie, 147 Ky. 281; Gossett v. Ky. Mfg. Co., 153 Ky. 101; Borderland Coal Co. v. Kerns, 171 Ky. 626, and cases therein referred to.

When the mandate which issued from the last appeal was filed in the trial court it became the duty of that court to set aside the order sustaining the demurrer to the petition and to overrule same, which it did, and which made the case then stand as if no answer had ever been filed. Macklin, Etc. v. Trustees, Etc., 88 Ky. 592; Hunt v. Hunt, 157 Ky. 835. There are numerous cases that might be cited in support of this rule of practice.

The identical point now being considered was before this court in the last case referred to, wherein the contention was made that the opinion on a former appeal barred the defendant of the right to file any defensive pleadings, and in denying the contention, we said:

"When the demurrer to the petition was overruled upon appeal to this court the situation of the case when it returned to the circuit court was precisely what it would have been if the circuit court had in the first instance overruled the defendant's demurrer to the petition. When their demurrer to the petition was overruled the defendants had the right to tender an answer. This they did. There is nothing in the opinion of this court preventing the filing of the answer. The case was here simply on demurrer to the petition. We only held that the petition showed a cause of action. But the defendants may plead to the cause of action thus shown by the petition just as they might have done if the circuit court had in the first place rendered the same opinion which we rendered."

The defendant, then, upon the last return of the case to the circuit court had a right to rely as a defense upon any matter not presented or determined by either of the former opinions. That part of his pleadings which sought to contest the constitutionality of the ordinances because of depriving him arbitrarily of his property, etc., was fully presented upon the second appeal and determined adversely to his contentions, but which he is again trying to present by certain paragraphs and parts of the amended answers.

Under the rule, *supra,* as to the effect of a former adjudication between the same parties, the demurrer should have been sustained to so much of the defend- ant's pleadings as attempted to raise this same ques- tion. But if there was no occasion to apply such rule the constitutionality of the ordinances have been many times upheld by this and other courts, as will be seen from the authorities referred to in the two former opin- ions in this case which we do not deem necessary to here repeat.

As to the second paragraph of the original answer. wherein it is claimed that the city is estopped because of acquiescence in the violation of the ordinances, it needs only to be said that the authority having the right to enact a law can repeal it only in the same man- ner by which it was enacted. The non-enforcement of the law has never at any time or anywhere been con- strued to have the effect of repealing it. Such a prin- ciple, if upheld, would strike a blow at the very vitals of government and render it possible for our present civilization to be supplanted by lawlessness even to barbarity, through the negligence, carelessness or in- difference of officers whose duties are to enforce the law, or by them corruptly entering into league with those who are the enemies of society and who do not respect the law, thus enabling such lawless element to become legislators for the purpose of repealing and an- nulling all laws offering restraints to their unscrupu- lous deeds, thereby placing the upright and the law- abiding at the mercy of the mob. The proposition is not only illogical, unsound and monstrous, but it is even unthinkable. Under our form of government the remedies for violating the criminal and penal laws, whether they be a part of the common law or created by the enactment of a statute or ordinance, and whether

the remedy be a prosecution or civil proceeding, may be invoked through the application of any citizen to the proper tribunal and compliance with the forms prescribed by the particular jurisdiction. If the many violations of the ordinances in question were committed, as set out in the second paragraph of the answer, the plaintiff himself could have caused the apprehension and trial of the violators thereof. He could, no doubt, also have set in motion the machinery of the law for the abating of the nuisance created by such violations upon proper showing of a refusal of the city to do so after reasonable request. By his failure to do so, he in this way, at least, is as much responsible for the non-observance of these ordinances as any other citizen. But, however this may be, it is perfectly apparent from all principles of government, and from what has been said, that the public cannot be estopped from enforcing its criminal or penal laws or any right growing out of their non-observance, because of the negligence or derelictions of any of its officers with respect thereto. We conclude, then, that the demurrer should be sustained to the answer and amendments, or any portions thereof seeking to rely upon this defense. This leaves for consideration only the two paragraphs of the last amended answer quoted above wherein the validity of the passage of the ordinances is called in question.

Before considering this point, it is intimated in brief that it is not competent to raise this question collaterally, or rather to show the vitiating facts by evidence *aliunde* the record of the city council. A complete answer to this, if the question was a new one, is that a record such as the city council is required to keep is evidence of no facts except those which the law requires it to contain, and there is nothing in any statute requiring the record to show that an ordinance was published in the manner required by law to make it legal. But the point has been decided many times by this and other courts to the contrary. See Bybee v. Smith, 22 Ky. Law Rep. 1684; Muir v. City, 120 Ky. 739; Commonwealth v. Williams, idem, 314; City of Bardwell v. Tegethoff, 148 Ky. 545; Spalding v. City of Lebanon, 156 Ky. 37. There are other cases from this court where the question was raised with reference to ordinances passed by cities of a different class than the fifth, the one to which Monticello belongs. Manifestly

the proposition is so clear as to leave no room for doubt. Section 3638 of the Kentucky Statutes, being a provision of the charter of cities of the fifth class, reads:

"The enacting clause of all ordinances shall be as follows: 'The city council of the city of ........................ do ordain as follows.' Every ordinance shall be signed by the mayor, attested by the clerk, and published at least once in a newspaper published in such city, or written or printed, and posted in at least three public places therein, and shall be in force from and after the publication thereof."

Section 3636, being a part of the same charter, provides that "No ordinance, resolution or order shall have any validity or effect unless passed by the votes of at least three members of the city council." It will thus be seen that in order to give the proposed ordinances drawn in question by this suit, any validity as such, they must be passed and given publicity in the manner pointed out by those two sections, for no municipality has any authority except that which may be expressly or impliedly given by its charter, and such authority must be exercised in the manner therein pointed out when it is attempted to be prescribed. If this is not done, that which was attempted to be made an ordinance becomes a nullity, and no rights and no authority may be exercised thereunder. (See authorities, *supra*). So, if the ordinances in question possessed the vice alleged by the defendant in the first and second paragraphs of his last amended answer, which was admitted by the demurrer, they are of no force whatever, and the city has no right to base any action upon anything contained in either of them. As its right to maintain this suit is based upon, and only upon, the authority given by the ordinances, if they are invalid its authority to proceed does not exist. The ordinances appearing to be regular, the burden is upon the defendant to show the irregularity of their enactment, as was determined by this court in the cases of Weatherhead v. Cody, 27 Ky. Law Rep. 631, and Muir v. City of Bardstown, 120 Ky. 739.

We conclude, then, at this, the ending of the third chapter of this case, that the court erred in sustaining the demurrer to the first and second paragraphs of the third and last amended answer, and the judgment is reversed for proceedings consistent with this opinion.