C. L. MORRISON, E. A. McCOLSKY and D. N. CONE, v. R. W. FARNELL, as Mayor of the City of Lake City, H. G. FORRESTER, et al., as Commissioners of the City of Lake City, and C. B. TREADWAY, as Chairman and W. R. GALL, et al., as Members of the State.Road Department of Florida.

171 So. 528.

Division B.

Opinion Filed December 2, 1936.

Rehearing Denied January 8, 1937.

386

*Cone & Chapman* and *Davis & Davis,* for Appellants;

*A. K. Black, J. B. Hodges* and *Arthur A. Simpson,* for Appellees.

BUFORD, J.—In this case transcript of record was filed in this Court on July 1st, 1936. The last briefs were filed on August 12th, 1936, and the Court, on motion, because of the public interest involved and the emergency apparent advanced the case on the docket and heard oral argument *En Banc* on September 15th, 1936. On this afternoon, of November 12th, 1936, the case has been assigned to me to prepare an opinion for the Court.

The appellants filed suit in the Circuit Court of Columbia County to enjoin the construction of a certain section of public highway which was proposed to be constructed by the State Road Department with the co-operation and certain help of the municipal officers of the City of Lake City. The proposed new section of highway would connect with State Road No. 1 at the Western boundary of the City of Lake City, would follow Park Street to Broad Avenue and thence proceed in a Southwesterly direction to Baya Avenue where that avenue intersects Marian Street upon which street State Road No. 2 enters the City of Lake City, and proceed thence Westerly to a point 425 feet North of the Northwest corner of the Southwest Quarter of the Southwest Quarter of Section 34, Township 3 South, Range 17 East; thence in an East-Northeasterly direction across State Road No. 28, intersecting present State Road No. 1 a few yards East of the present junction of State Road No. 1 and State Road No. 28.

The record does not show the formal location and designation by the State Road Department of a highway

through the City of Lake City as State Highway No. 1. State Highway No. 1 appears to have been constructed through Columbia County as two separate projects. One was project No. 24, from the Eastern boundary of Lake City at the terminus of Duval Street to the Baker County line. The other was project No. 504, which extended from the Western limits of Lake City at the terminus of Park Street to the Suwannee County line.

The record shows that there was an unpaved gap between the paving on Duval Street and the Western limits of Lake City. The State Road Department laid paving from the paving on Duval Street to State Highway No. 1 on the Western boundary of Lake City. The record shows that there was also an unpaved gap between the City limits on the Eastern end and the paving on Duval Street. This gap was also paved by the State Road Department.

Section 1657 C. G. L., being a compilation of provisions taken from Chapter 9310, Acts of 1923, with amendments and additions culminating in Chapter 12405, Acts of 1927, designates Road No. 1 as follows:

"Road No. 1, extending from the Alabama State line at Nunez Ferry to Jacksonville, passing through Pensacola, Milton, Crestview, DeFuniak Springs, Bonifay, Chipley, Marianna, Chattahoochee, Quincy, by or near Havana, Tallahassee, Monticello, Greenville, Madison, Live Oak, Lake City, Sanderson, McClenney and Baldwin."

And that section contains the following:

"Provided further, that the State Road Department is hereby authorized and empowered to survey and locate the line or route of any State road or section of any State road herein numbered and designated, whenever in the judgment of said department the doing of such work shall be found to be practicable and to the best interests of the State.

Whenever such survey and location shall be made and adopted by the said department, a map or plat of such survey and location, certified by the secretary and chairman of the department shall be filed in the clerk's office of each county through which said State road or section thereof so surveyed and located shall run."

It is not made to appear that there was any survey of State Road No. 1 through the City of Lake City. Nor is it made to appear that any map or plat of that portion or section of State Road No. 1 between the Eastern boundary line of the City of Lake City and the Western boundary line of the City of Lake City was ever certified or filed in the office of the Clerk of the Circuit Court of Columbia County.

It is true that the record shows that Duval Street has been used by the traffic as the connecting link through Lake City and has been marked as United States Highway No. 90 and as State Road No. 1, but we cannot hold that this precludes the State Road Department from completing the work of locating State Highway No. 1 and locating the same on some other route than on Duval Street through the City of Lake City.

The record shows that Duval Street passes through the business section of the City, by the side of the main school building in the City and is congested with traffic to such an extent as to be entirely inadequate as a public thoroughfare to carry the local traffic and also the through traffic using State Highway No. 1.

According to the scale of the map which is before us in this case, the proposed highway will be constructed approximately two thousand feet South of Duval Street, or, in other words, the plat shows that there are eight (8) city

blocks between Duval Street and Baya Avenue at State Road No. 2 or Marian Street.

We find that there appears to be no abuse of discretion on the part of the Road Department in locating State Road No. 1 over the route upon which it is proposed to construct the same.

Complainants in the court below attacked the validity of the ordinance under which the City of Lake City proposes to participate in the construction of this Highway.

We take judicial cognizance of the fact that Florida is a rapidly growing state and that traffic over the main highways of the State, of which State Road No. 1 is prominent, is increasing by leaps and bounds.

The record shows by actual count traffic sufficient to dangerously congest Duval Street and with the evidence before it we hold the City Council did not abuse its discretion in passing the ordinance involved as an emergency measure.

The record shows that the necessity of relieving Duval Street of a part of the traffic had existed for a long time; that that necessity had become acute and that the City authorities deemed it advisable and expedient to co-operate with the Federal and State Government in establishing and constructing an additional through thoroughfare which would have the result of relieving traffic congestion on Duval Street and eliminating the grave danger which exists in the school zone, as well as elsewhere, along that thoroughfare in its present condition.

The record shows that before this ordinance was passed one child had been killed by traffic on Duval Street near the school.

The preamble under which the ordinance was passed was in the following language.

"The City Commission of the City of Lake City, Florida,

a municipal corporation, organized and existing under and by virtue of the laws of the State of Florida, has on this the 19th day of August, A. D. 1935, and does now, being at and in regular session and meeting, expressly so declare, publish, determine and make known, the following ordinance, is to be enacted, is being enacted, and is enacted in every respect, as an emergency measure, which said measure deals with and concerns the immediate preservation of the public peace, property, health and safety and provides for the daily operation of the municipal government of the City of Lake City, Florida, said emergency being set forth herein and defined to be, the necessity for establishing, widening, extending, opening and improving a street in the City of Lake City, Florida, for the use and travel of the general public thereby and as a result thereof relieving congested traffic conditions in various parts of the City of Lake City, Florida, and thusly safeguarding the health and safety of the citizens of the City of Lake City, Florida."

We think this expression a sufficient finding and determination by the City authorities of the existence of an emergency.

The Charter Act of the City of Lake City is Chapter 8993, Special Acts of the Legislature of 1921. Sections 22 and 23 of the charter provide as follows:

"Section 22. Ordinance Enactment.—Every proposed ordinance or resolution shall be introduced in written or printed form and shall not contain more than one subject, which subject shall be clearly stated in the title; but general appropriation ordinances may contain the various subjects and accounts for which moneys are to be appropriated. The enacting clause of all ordinances shall be: 'Be It Enacted by the People of the City of Lake City.' No ordinance, unless it shall be an emergency measure, shall be

passed until it shall have been read at two meetings, not less than one week apart, or unless the requirement of such reading has been dispensed with by unanimous vote of the Commission.

Sec. 23. Emergency Measures.—All ordinances and resolutions passed by the City Commission shall become effective thirty days from the date thereof, except, that the City Commission may by unanimous vote, pass emergency measures to take effect at the time indicated therein. An emergency measure is an ordinance or resolution for the immediate preservation of public peace, property, health or safety, or providing for the usual daily operation of a municipal department, in which the emergency is set forth and defined in a preamble thereto. Ordinances appropriating money may be passed as emergency measures, but no measure making a grant, renewal or extension of a franchise or other special privilege, or regulating the rate to be charged for its services by any public utility, shall ever be so passed."

Reference to the preamble above quoted discloses that the City Commission conceived the ordinance to be an immediate necessity and that its purpose was to preserve amongst other things the property, health and safety of the people of the municipality.

The provisions of the charter were substantially complied with in the adoption of the ordinance here involved. Such ordinances should be construed liberally in favor of the general public and not strictly so as to favor interests of individuals. See McQuillin, Municipal Corporations, 2nd Ed., Vol. 2, pages 895; Cream City Bill Posting Co. v. Milwaukee, 147 N. W. 25.

It is well settled that where an ordinance appears regular on its face the burden is upon him who denies its validity to show irregularity in its enactment, that is that it

was not passed·by the prescribed vote, or was not published as the charter requires. Bates v. Monticello, 173 Ky. 244, 190 S. W. 1074; Muir's Administrators v. City of Bardstown, 120 Ky. 739, 87 S. W. 1096.

In McQuillin on Municipal Corporations, 2nd Ed., Vol. 2, page 597, it is said:

"Some charters provide that before an ordinance shall take effect it must be published in a manner provided. Such provisions are generally applicable to police and penal ordinances, but not to emergency ordinances. In the absence of facts showing urgency the mere declaration of the municipal legislative body so declaring in an ordinance will not render it immediately operative. But if no evidence to the contrary appears, the presumption arises that the action was based upon facts after sufficient inquiry. At least the declaration is *prima facie* evidence of the fact of emergency. If, however, the court should find upon hearing of such issue properly before it that there was no ground for the declaration, such finding would preclude the ordinance from taking immediate effect, but would not invalidate it. The time of its taking effect would be postponed only."

The ordinance under consideration provided in terms that it should take effect on the 23rd day of August, 1935, and was, as heretofore shown, adopted on the 19th day of August, 1935.

All presumption will be indulged in favor of the validity of the ordinance. See State, *ex rel.* Taylor v. City of Jacksonville, 101 Fla. 1241, 133 Sou. 114.

In the case of State, *ex rel.*, v. Dillon, 75 Fla. 785, 79 Sou. 29, this Court said:

"It is also urged that the ordinance is not valid because it is not such an emergency measure as is authorized by the charter of the City to be read three times and adopted at

one session and given immediate effect. The ordinance provides for and regulates the registration of persons, firms and corporations who may engage in any business, profession or occupation in the city therein enumerated, fixes and prescribes the amounts of license taxes imposed, regulates the carrying on of business under such licenses, and provides penalties for the violation of the ordinance. It was declared by the City Council to be necessary for the preservation of the public peace and safety, and by its terms went into effect immediately upon its passage and approval by the mayor. This we think is a sufficient compliance with the charter provision on the subject. The ordinance is presumptively valid (Dillon on Municipal Corporations [5th ed.], Sec. 649; McQuillin on Municipal Corporations, Sec. 794; People v. Grand Trunk W. R. Co., 232 Ill. 292, 83 N. E. Rep. 839; Norfolk P. & N. N. Co. v. City of Norfolk, 105 Va. 139, 52 S. E. Rep. 851), and the question of whether or not such emergency exists as to warrant its being made immediately effective rests in the judgment and discretion of the City Council. 36 Cyc. 1193; Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. Rep. 559; Day Land & Cattle Co. v. State, 67 Tex. 526, 4 S. W. 865; State, *ex rel*. Lavin, v. Bacon, 14 S. D. 394, 85 N. W. Rep. 605."

As to compliance with the provision requiring that the ordinance should state the time when it would take effect see Adams v. Isler, 101 Fla. 457, 134 Sou. 535. Conditions here appear to meet rule laid down in that case.

It is contended that the appellees, property owners, have certain vested rights in having the traffic continued on Duval Street. There may be some conditions under which property owners would have that right, but it is a well settled rule that the individual convenience must yield to public necessity. There is no threat to destroy Duval

Street as a thoroughfare suitable for traffic. There is no threat to physically injure any property on that street. The only threat is to turn a part of the traffic on to a safer, wider and less dangerous way. That the City may in the construction of this highway co-operate with the Federal and State Government cannot be seriously questioned.

A like contention was presented in the case of Lewis, *et al.*, v. Leon County, 91 Fla. 118, 107 Sou. 146. In that case this Court held that Leon County could participate and co-operate with the State Road Department in the construction of a part of State Highway No. 1 in Leon County.

Except for the fact that the authority of the municipality of the City of Lake City is questioned in this case, there is practically no difference in the principles of law involved and those which were involved in the case of Clifford C. Enzian, *et al.*, v. State Road Department, 122 Fla. 527, 165 Sou. 695.

The record discloses no reversible error and, therefore, the decree appealed from should be affirmed.

It is so ordered.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., concurs in the conclusion.

BROWN, J., dissents.

BROWN, J. (dissenting).—As I interpret the facts of this case, the proposed change, however desirable it may be, amounts to a relocation of a substantial portion of State Road No. 1, which had theretofore under the statutes then in effect, been permanently designated and located, and that to accomplish this new legislation would be required. The facts as I understand them clearly differentiate this case from the case of Enzian v. State Road Dept., 122 Fla. 527, 165 So. 695.