75 So.2d 596 (1954)
Cecil M. WEBB, M. Johnny Walker, Dave Turner, Francis P. Whitehair and F.M. Turner, Jr., as and constituting the State Road Department of Florida, Petitioners,
v.
Louis HILL, Respondent.
Supreme Court of Florida. En Banc.
October 29, 1954.
Rehearing Denied November 3, 1954.
*598 George C. Dayton, Dade City, Ross H. Stanton, Jr., Tallahassee, and Bryan W. Henry, Miami, for petitioners.
Caldwell, Parker, Foster & Wigginton, Tallahassee, for respondents.
MATHEWS, Justice.
This is a petition for certiorari to review an order of the Circuit Judge granting an application for a temporary injunction against the members of the Road Department from acting upon any bids which may be received for the construction of a part or section of a state road in Wakulla County.
No motion to dismiss or answer was filed and no testimony was taken.
As the powers of the State Road Department are involved and the principles of law are so far reaching, we may well review briefly the changed public policy of the State, as adopted by the Legislature.
The Legislature has had plenary powers with reference to roads, bridges and streets from the adoption of our present Constitution. *599 Prior to the creation of the State Road Department, the authority to locate and designate streets, roads and bridges in a municipality was vested in some board in the municipality and with reference to roads and bridges outside of the corporate limits, such power and authority was vested in the Board of County Commissioners. These official boards were only concerned with the streets, bridges and roads to serve local needs. There were no state roads and no policy with reference to state roads. As a matter of public policy the Legislature deemed it advisable to adopt a state highway system and to create a state road department in which it vested certain discretion and duties with reference to the designation, location and construction of state roads.
The boards of municipalities and counties of the state are vested with no authority, duty or discretion with reference to the location, designation and construction of the state roads comprising the state highway system. They may argue, take sides, protest, or attempt to persuade or use influence for the special benefit of their property or municipality, but they have no lawful authority. The authority to exercise discretion and make decisions is vested in the State Road Department by the Legislature.
The power of the State Road Department must be found in the statutes. If the power to act and to exercise discretion is not found in the statutes, then the acts may be unlawful and enjoined.
The two major questions presented are:
(1) Is the road project in question a part of the state highway system duly designated as such by the Legislature?
a. If the road has been designated, may it be constructed in sections?
b. In locating such sections may the State Road Department deviate from a straight line?
(2) Was the project in question lawfully included in the final budget of work as provided for in F.S. Section 341.20, F.S.A., or other applicable statutes?
If the answer to either question is no, the injunction was proper.
Other minor, or secondary, questions are presented which will be discussed in this opinion.
It is alleged in the bill filed by a taxpayer of Leon County, that on October 1, 1954, at a regular meeting of the State Road Department the members thereof adopted a motion authorizing the construction of a section of a road involved, extending from a point on State Road 61 West of Wakulla Springs, in Wakulla County, Florida, and in a northerly direction to the western boundary line of said county; that the defendants have caused an advertisement of a notice inviting bids for the construction of the road to be filed with the Department on October 19, 1954; that the project is a portion of a road incorporated in the 1954 fiscal budget of work; that the action taken by the defendants is without authority of law and that the motion adopted by them to advertise for bids is null, void and of no effect for the following reasons:
(1) That Road 267 involved in this proceeding is a mere segment that has never been properly designated as a state road in accordance with the requirements of law and the Road Department is without authority to expend public funds on a road which has not been properly and lawfully designated as a part of the state road system.
(2) That the project in question was not included in the preliminary budget of work provided for by Section 341.20 F.S.A., and advertised and on which public hearings were held by the Department. The gist of this ground is that the project, not being included in the first budget as advertised, did not afford the general public an opportunity to protest the project in question, and could not be included in the final budget of work adopted on February 26, 1954.
The bill then alleges that the action taken on October 1, 1954, to proceed with the plans of the construction of the road did *600 not reflect nor constitute the independent thinking, judgment or discretion of the individual members of the Road Department or constitute the consolidated thinking, judgment, discretion or action of the Department. It also details conversations and statements made by various members of the Department and a statement to the effect by one member that he had received a directive from Acting Governor Johns to construct the road.
The petitioners seek to review the order granting the temporary injunction and claim that the Chancellor did not follow the law or that he misapplied the law.
On the hearing before the Chancellor and before this Court all well-pleaded facts are taken to be true but not the conclusions. We are not bound by any misapplication of the law by the Chancellor or his failure to follow the law in granting the temporary injunction.
It is first contended that the road in question had not been properly designated as a state road and a part of the state highway system. There is no merit in this contention. In 1937 the Legislature enacted Chapter 18268, Laws of Florida 1937, which is as follows:
"Section 1. That the following described road be and the same is hereby designated and established as a State Road of the State System of Roads of this State with all the rights and privileges of designated State roads and to be assigned an appropriate number by the State Road Department, to wit:
"Beginning at an intersection with State Road No. 10, at Wakulla Station, Wakulla County, Florida, and running in a generally northwesterly direction passing through the southern half of section 2, range 1 west, township 3 south, to an intersection with State Road No. 19 at or near Bloxham in Leon County, Florida."
The above designation in 1937 was sufficient. In addition to that, F.S. Section 16.44 F.S.A. provides as follows:
"(8) Inasmuch as road designation laws are to be printed and published in the permanent session laws of the legislature, it is expressly provided that neither print nor table index thereof shall be included in the Florida Statutes, however, a table and index of such road designation laws may be maintained and kept by the attorney general, current with each new legislative session, as a part of the records of the statutory revision department, which table and index shall be available at all times as a public record and document."
In Vol. III, Helpful and Useful Matter, Florida Statutes 1941, page 377, under the heading Leon County, this particular road designated by Chapter 18268, Laws of Florida 1937, was indexed and the chapter number was published. Pursuant to the above quoted portion of F.S. Section 16.44, F.S.A., the Attorney General again caused to be published a table and index of road designation laws in which the identical road, as designated by Chapter 18268, Laws of Florida 1937, was listed under the title Leon County. See Index to Special and Local Laws, 1845-1951, Chapter L.
The law designating this road and the indexing and carrying forward the chapter number of such law has never been amended or repealed.
When a road is designated as a state road the authority to construct such road is vested in the State Road Department and the discretion as to when such road shall be constructed in the absence of specific directions from the Legislature is vested in the State Road Department and that discretion should not be disturbed by the courts. Practically every community in the State is interested in some particular road which would benefit that community. There is constant competition and argument between these communities. The discretion to determine these matters with reference to state roads is not vested in the citizens *601 or the officials of any particular community but is vested in the members of the State Road Department.
It is next contended that the contract in question covers only a portion or section of the road and does not run in a beeline from the intersection with State Road 10, at Wakulla Station, through the south half of section 2, range 1 west, township 3 south, to an intersection with State Road 19, at or near Bloxham, and, therefore, the action of the Road Department is illegal. F.S. Section 341.47, F.S.A., specifically authorizes the awarding of contracts for designated state roads in sections. There is no law which requires that a designated state road shall be constructed under one contract. A typical example of the reasonableness of awarding contracts for a road in sections is that of the state road from Pensacola to Jacksonville. It would be rather difficult to find a contractor with the financial means and road building equipment to undertake such a gigantic project as one contract. As a matter of fact, this road was built in sections and contracts were awarded at different times to different contractors, under different administrations.
It is urged that the action taken is illegal and void because the portion or section of the road does not run in a beeline from the place of beginning to the place of ending and that it does not run through the southern portion of section 2, range 1 west, to township 3 south, to an intersection with State Road 19 at or near Bloxham. It is quite true that the section in question does not run through the southern portion of section 2, range 1 west, township 3 south, to an intersection with State Road 19 at or near Bloxham, but other roads have been built since the road in question was designated in 1937, and it does make a connection with State Road 61 a short distance from the southern portion of section 2 above described. When the other section of the road leading to Wakulla Station is to be constructed will be the time to survey and definitely locate that section of the highway. The power of the State Road Department to determine and fix lines and locations of roads is delegated in the following sections of the Florida Statutes:
"341.47 Powers of state road department with reference to state roads
* * * * * *
"The state road department may determine and fix the lines and locations of such roads between the cities and places thereon, named in said section. * * * provided further, that the state road department may survey and locate the line or route of any state road or section of any state road numbered and designated in the preceding section, whenever in the judgment of said department the doing of such work shall be found to be practicable and to the best interests of the state. Whenever such survey and location shall be made and adopted by the said department, a map or plat of such survey and location, certified by the secretary and chairman of the department, shall be filed in the clerk's office of each county through which said state road or section thereof, so surveyed and located, shall run.
* * * * * *
"341.81 State roads designated, effective date of no-fence law upon
"* * * all * * * routes that may be hereafter approved, designated, dedicated and constructed by the state road department * * * are hereby designated and declared to be and are established as state roads, forming parts of the state system of roads * * *."
This question was presented in the case of Orange County v. Fordham, 160 Fla. 259, 34 So.2d 438, 442, and this Court said:
"The next argument presented is that under the guise of making a survey and locating the line or route of an established road the State Road Department has not the power to designate or establish an entirely new road. One of the answers to the argument is that the Legislature of Florida withdrew from the State Road Department many *602 years ago the power `to designate and establish state roads.' Section 341.47, F.S.A. But the power to survey and locate the line or route of any State Road or section of any State Road previously designated and established was left to the sound judgment and discretion of the State Road Department. Section 341.47, supra. The general trend of the decisions of this Court sustains the conclusion that the relocation and construction of a section of a previously established temporary designated road is not the location and construction of an entirely new road by the Road Department within the meaning of the cited statutes. See Enzian v. State Road Department, 122 Fla. 527, 165 So. 695; Morrison v. Farnell, 126 Fla. 385, 171 So. 528; Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578; Brower v. Putnam County [160 Fla. 17], 33 So.2d 220."
In the case of Morrison v. Farnell, 126 Fla. 385, 171 So. 528, 532, this Court said:
"It is contended that the appellees, property owners, have certain vested rights in having the traffic continued on Duval street. There may be some conditions under which property owners would have that right, but it is a well-settled rule that the individual convenience must yield to public necessity. There is no threat to destroy Duval street as a thoroughfare suitable for traffic. There is no threat to physically injure any property on that street. The only threat is to turn a part of the traffic on to a safer, wider, and less dangerous way. That the city may in the construction of this highway co-operate with the federal and state government cannot be seriously questioned." (Emphasis supplied.)
The bill of complaint does not show any substantial deviation to defeat the purpose of the Legislature. In the case of Lewis v. Leon County, 91 Fla. 118, 107 So. 146, 157, an attempt was made to defeat validation of bonds. This Court said:
"* * * The fact that a particular route might meet with the approval of the interveners might not prevent such route from being more satisfactory to a much larger number of taxpayers. Therefore, in order for any change of route to be invoked to defeat validation, it should be such as to defeat the purpose expressed in the resolution and ratified by a large majority of the qualified electors at the election held thereunder."
It is seriously contended by the respondent that even though the road was designated as a part of the state highway system by the Legislature and may be constructed in sections, that it was improperly and unlawfully included in the work budget for the fiscal year in which the construction is sought to be accomplished. This question makes it necessary for us to carefully analyze and consider F.S. Section 341.20, F.S.A., which section is the authority under which the Road Department acted. This section requires that the Road Department at the meeting held in January make an estimate of its resources for the ensuing year which are available for the construction and maintenance of roads and shall at such meeting make up a budget of maintenance and construction work to be done during the ensuing year; that the budget of work should be so planned as to exhaust the estimated resources of the Department for the year with the exception of ten percent which shall be held in reserve to do emergency work not included in the budget; and that the budget of work above mentioned shall be published in the manner therein specified. It requires that the Department appoint a time and place for public hearings as to the said budget of work at which time it shall hear all complaints and suggestions offered by the public as to any changes desired in such budget. The bill of complaint alleges that all this was done but that the road in question was not in this budget of work. It does not show who, or if anyone, appeared to make complaints. If the section of the statute stopped there, the budget of work as published may have *603 become the final budget for the year, but it did not stop there. The section, F.S. § 341.20, F.S.A., then provides:
"Upon completion of such hearing, the department shall decide upon and make up a final budget of work for the ensuing year, and no construction or maintenance work shall be undertaken by the department other than that set forth in such budget of work until such budget has been completed. * * *"
This section provides for two budgets. The first budget is sometimes referred to as the "preliminary budget" which is to be published and an opportunity for a hearing thereon given. Upon the completion of the hearing, whether anyone makes complaint or not, the Department shall decide upon and make up a final budget of work for the ensuing year, and "no construction or maintenance work shall be undertaken by the department other than that set forth in such budget of work (final budget of work) until such budget has been completed." This section must be construed as a whole and not in isolated sentences or paragraphs. The words last above mentioned, or quoted, were inserted by the Legislature for some purpose because the Legislature does not include a paragraph in an Act idly, unnecessarily and without any purpose. In the case of Alexander v. Booth, Fla., 56 So.2d 716, 718, this Court said:
"This Subsection 7 of Section 103.101 was enacted for some purpose. We cannot assume that the Legislature would enact a law without some purpose in view. See Girard Trust Co. v. Tampashores Development Co., 95 Fla. 1010, 117 So. 786."
The section in question does not prohibit the doing of any work not set forth in the first budget or preliminary budget. The limitation is "such budget of work", and that refers to the "final budget of work" contained in the same paragraph and the same sentence. The words quoted are meaningless and unnecessary if the Road Department could not undertake any work not included in the first, or preliminary, budget. In other words, if the first, or preliminary, budget, after publication and opportunity of a hearing became the final budget, then it would not be necessary for the State Road Department to "decide upon and make up a final budget of work for the ensuing year".
In this particular case only one section of a highway duly designated by the Legislature as a part of the state highway system is involved. There is no suggestion in the pleadings that the inclusion of this one section of one road will wreck the first, or preliminary, budget or make its accomplishment impossible. No such question is presented and we do not decide any such question. The addition of this one section of a state highway as hereinabove set forth in the final budget of work was not unlawful and does not defeat the purpose of F.S. Section 341.20, F.S.A.
It is urged that the entire proceeding of the Road Department is null and void because of conversations which took place by members of the Road Department and by citizens prior to the adoption of the final budget of work.
It is insisted that the work should not be included in the budget without a request or demand by the duly elected officials of two counties of the state, or by the citizens of one of the counties of the state. There is nothing in the law which ties the hands of the State Road Department to adopt a final budget of work based upon the request or demands of any duly elected officials or any particular group of citizens. The bill of complaint does show that various officials and citizens of Leon County appeared before the Board and protested the contemplated work and that a citizen of Escambia County (unnamed) who claimed the title of Chairman of the Roads Committee of the Pensacola Chamber of Commerce did appear and urged that the road be constructed "in order to provide a shorter route for the motoring public traveling from Pensacola to South Florida". The appearance of these individuals in advocating or protesting the road could not *604 tie the hands of the State Road Department. After hearing those conflicting demands it was a part of the function of the members of the State Road Department, to settle such conflicts and disputes by the final action taken.
It is further contended that the action of the Road Department is illegal and should be enjoined because the owner or owners of some private property will be benefited by the construction of the road. There has never been a road constructed which did not benefit someone or some particular property more than another. If the fact that private property or private individuals are to be benefited by the construction of a highway is sufficient to enjoin its construction, there would never have been a road built in Florida and probably would never be another road built in Florida. In the case of State of Florida v. Florida State Improvement Commission, Fla., 1954, 75 So.2d 1 we said:
"In the planning and construction of roads and bridges discretion must be placed somewhere. The needs of communities, counties and the state may be considered by these agencies in which discretion is vested. It is well settled in this state that the authority of the Legislature over roads and bridges is plenary unless restricted or forbidden by some particular provision of the Constitution of the United States or of the State of Florida. The authority of the administrative agencies to whom is entrusted these governmental functions is limited only by the lawful exercise of their discretion. Within their respective areas of authority these public agencies exercise their discretion to devise plans and select sites to best serve the public need. When the plans adopted by such agencies do not exceed their lawful authority they should be upheld because the Court will not substitute its judgment for that of administrative agencies.
* * * * * *
"The establishment, continuance and location of roads and bridges is vested in the discretion of administrative agencies. The sites or location of public improvements have always been questions over which men differed. Experience has demonstrated that squabbles and disputes over locations and sites of public improvements always come into being at the very contemplation of a major public improvement. It is true with reference to court houses, schools, playgrounds, parks, and particularly, with reference to roads and bridges. It seems to be a part of human nature for property owners, and particularly those owning commercial establishments, such as, motels, fishing camps, gasoline stations and amusement centers to feel that the location or site of a major road or bridge development is all right if it goes in front of their door. Everyone would like for his particular property to be benefited by reason of the location or site of the improvement. The primary purpose of building roads and bridges is to serve the general public rather than a particular individual or a particular part of a community."
The fact that a particular individual, community, or town will be benefited more than another is no cause for a temporary injunction.
In the case of Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578, 580, this Court said:
"We may also say that private interest in one route or another is not a matter to be considered as controlling in the determination of a location of a State highway."
It is alleged that the action taken was to pay a political debt due to some promises made by Acting Governor Johns during the recent primary. The facts are that the road was designated in 1937 and was included in the budget for work February 26, 1954, which was prior to any campaign for Governor. But be that as it may, we imagine that there have been no campaigns for Governor in recent years in *605 which a part of the platforms of candidates was not a road building program and various promises would be made with reference to that matter. The fact that a candidate for Governor may have promised a group, or the citizens of a city, or county, that he would undertake to build a certain road, would be no basis for enjoining the building of such road.
Many of the state roads have been designated by the Legislature as a result of promises. Much of the actual construction of state roads and bridges is the result of the fulfillment of promises made during a political campaign. If construction of a state road or a section thereof may be enjoined because it is the result of a promise, then all construction of state roads and bridges may be stopped by a dissatisfied taxpayer.
It is urged as one of the grounds to sustain the injunction the fact that the Federal Bureau of Roads refused to grant federal aid or to take part in the construction of the project. This contention is without merit. There is no statute which provides that no state road duly designated by the Legislature shall not be included in the final budget or constructed by the State Road Department unless approved by the Federal Bureau of Roads. If such were the law, all power over construction of state roads as parts of the state highway system would be surrendered to the Federal Government and the road building in Florida would be brought to a virtual standstill.
We have applied the law as we have found it. We did not make the law. The policy with reference to state roads and the authority to adopt the budget is fixed by law. We have no authority to amend or change the law or adopt or enact a law in accordance with our views.
It may be that too much authority is given to a particular administrative board, but that is for the Legislature to determine and not the courts, unless some power is delegated or vested in contravention of the organic law.
All of the talk and discussions prior to the final action alleged to have been made with reference to this project are not controlling. We can only look to the law and the final action taken under the law.
In every county of the state there may be disputes and conflicts of opinion as to whether all state roads shall run through the county seat and further congest traffic and wear out the local streets, or whether some of such state roads should by-pass the county seats in order to avoid slow-downs occasioned by congested traffic conditions, but such matters do not present judicial questions unless the routing of a road is in direct conflict with the mandates of the Legislature.
It should not be forgotten that our government is divided into three departments: the legislative, executive and judicial. The Legislature determines the public policy of the state as to what roads shall constitute a part of the state highway system. The authority to determine when and how these roads shall be built is vested in the executive or administrative department of the government by the Legislature and the courts should not substitute their judgment with reference to these matters for that of the legislative or executive departments.
The petition for writ of certiorari be, and the same is hereby, granted, and the order for a temporary injunction be, and the same is hereby, quashed.
ROBERTS, C.J., and SEBRING, HOBSON and DREW, JJ., concur.
TERRELL, J., dissents.
THOMAS, J., not participating.