WHITE, Judge
(dissenting).
As noted in the majority opinion the plaintiffs allegedly are residents and real property owners of the unincorporated town of Olga suing in their own behalf, and for numerous others similarly situated, to obtain rectification of an alleged public nuisance created by the defendants through removal of a bridge; and the plaintiffs allege facts purporting to show special inconvenience and damage to themselves.
Specifically the suit was brought to restrain the defendants from vacating the “Olga Bridge,” which structure actually has been removed, and to require replacement of the span as part of a subsisting public way. It is alleged in substance that the defendants by deliberate concert of action caused the town of Olga, located on both sides of the Caloosahatchee River, to be severed by destroying the bridge which was the only bridge cmd sole practical means of cross-river travel and commerce between the two segments of the community; that in widening the river Flood Control had found it “necessary” to remove the bridge which constituted a part of former State Road 31 at Olga; that in order to obtain assurance against any obligation which Flood Control might have consequent upon the disruption of cross-river access at Olga, Flood Control had previously entered into secret agreements with the County and with Road Department whereby Flood Control would contribute $225,000.00 toward construction of a new “Wilson-Rigott Bridge” on a new relocated “State Road 31” approximately five miles west of Olga; that thereupon Road Department began building the new “Wilson-Pigott Bridge” while Flood Control began removing the “Olga Bridge.”
The plaintiffs, asserting gross abuse of discretionary power on the part of defendants, allege that former State Road 31 is still being maintained but without the bridge; that plaintiffs and other Olga residents on one or the other side of the river must now travel a minimum of ten miles to cross the river and reach the other portion of the town, and that this lengthy route is in gross disrepair and highly dangerous; and plaintiffs allege general and special reduction of value of their properties due to the removal of the bridge without any replacement. With respect to the latter allegation the defendants submit, and the plaintiffs agree, that ordinarily no one has a vested right to the maintenance of a public highway in a particular place and that reduction of property values merely as a result of traffic diversion does not of itself denote compensable damages or unlawful infringement of rights. See e.g. Jahoda v. State Road Department, Fla.App.1958, 106 So.2d 870.[1]
The defendants submit citations soundly, underlining the rule that public authority has broad discretionary power to change and redesignate public roads. The plaintiffs retort that this generally correct rule implies its limitations and does not foreclose the right here asserted to a re-establishment of cross-river access on the road which is still maintained as a public way but without the bridge which was a vital connecting link. In other words, the plaintiffs submit inter alia that in relating the general rule to the particular situation it does not follow that the defendants, or any of them, had the right to annihilate the bridge on the subsist *373 ing public road at Olga even though the previous designation as “State Road 31” has been lawfully applied to another road some five miles away.
Notwithstanding defendants’ contrary contention, this is properly denominated a class suit on behalf of plaintiffs and numerous others similarly situated. The questions are of common interest to the members of the class, and special or distinctive injury .and inconvenience is adequately pleaded. See 24 Fla.Jur. Parties §§ 16 et seq.; 67 C.J.S. Parties, §§ 13-14, cf. Brooks-Garrison Hotel Corp. v. Sara Inv. Co., Fla.1953, 61 So.2d 913, 916. Plaintiffs of the severed Town adequately allege special damages differing in kind from those sustained by the public at large. Compare O’Dell v. Walsh, Fla.1955, 81 So.2d 554, a suit to remove an obstruction on a certain public road.[2]
There is, of course, no doubt that administrative boards created by the State legislature and authorized to contract, borrow money and undertake projects and obligations in the business world, may be sued in appropriate actions as legal entities. See e.g. Board of Public Instruction, etc. v. Knight & Wall Co., 1931, 100 Fla. 1649, 132 So. 644. Although not specifically denominated as such, the instant suit is in the nature of an inverse condemnation proceeding. Such actions are generally pursued against governmental agencies for the redemption of property rights taken in fact by the governmental defendants without formal exercise of eminent domain procedures. Injunc-tive relief is usually sought in such instances, and our courts have upheld inverse condemnation proceedings as legally recognizable causes of action. See e.g. City of Jacksonville v. Schumann, Fla.App. 1964, 167 So.2d 95, First District Court of Appeal, opinion filed 18 August 1964.
A necessary question concerns whether the authority to condemn for public use carries with it the right to destroy a portion of an allegedly vital and presently used right of way without legal redress. It is recognized that the law does not guarantee a property owner the most convenient route from his door and that private interests must often yield where the good of the community is at stake. Here, however, proper parties plaintiff allege wilful destruction of a vital link of a public right of way otherwise maintained which effectively severs the economic unit, Town of Olga, without notice or hearing and without proceeding under the law relating to abandonment or vacation of roads and bridges.[3] As noted, the remaining right of way is still maintained — but without the bridge. Adjoining landowners must have some protection against possible arbitrary and unreasonable destruction of routes of travel, and necessary remedies are available in equity[4] especially where the severance might indirectly result in the constructive vacation of connecting rights of way.
It should be emphasized that this appeal is confined to the question of pleading; viz., whether or not the complaint as amended is sufficient to withstand the motions to dismiss. The complaint was amended three times, which is indicative of the chancellor’s recognition of the very broad discretionary powers vested in the defendant public bodies. *374 It is also evident that the chancellor, in refusing to dismiss the thrice amended complaint, recognized that these discretionary powers are not impervious to challenge on the ground of palpable abuse.[5] It was apparently for these reasons, and on the premise that the establishment of plaintiffs’ allegations could impel an affirmative adjudication of right with potential relief for the plaintiffs, that the chancellor denied the motions to dismiss.
Plaintiffs allege a legal wrong. It is possible that the defendants may have funds available for legal redress. Perhaps the replacement of the span had been duly contemplated following the corrective measures engineered by Flood Control with funds specifically reserved. The court is without knowledge as to such matters and such eventuality should not be summarily treated one way or the other — at least not before the filing of responsive pleadings; nor should affirmative defenses be asserted as grounds for dismissing the complaint even though the availability of the defenses in bar to the action may appear on the face of the complaint. Fletcher v. Williams, Fla.App.1963, 153 So.2d 759, 762; Carson v. City of Fort Lauderdale, Fla.App.1963, 155 So.2d 620, 623.
The purpose of a complaint is to plead a cause of action, not to prove one, and suspected weakness in the issues or forseeable difficulty of proving certain allegations may not rightly be used as grounds for granting a motion to dismiss; and incorporation of some incompetent matter does not justify final dismissal of a complaint otherwise justiciable. Under the liberality of modern rules of pleading the well-pleaded facts of the instant complaint, as finally amended, appear to contain sufficient allegations inviting further inquiry and calling for responsive answers. The chancellor considered the complaint not without equity, andj. in agreement, I would affirm.

. These defensive points may be raised more appropriately by motion to strike than by motion to dismiss, unless the complaint otherwise wholly fails to state a justiciable cause.

. “It is impossible to see how the appellee can prevail on the face of the established law. He was not a citizen of the county; he owned no property on the road; another road toas equally accessible. In these circumstances he patently had no standing as a litigant seeking either a preventive or coercive writ.” (emphasis added) [O’Dell v. Walsh, supra]

. § 29 of Article XVI, Florida Constitution, F.S.A. states in part: “No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money * * (emphasis supplied)

.§ 4, Declaration of Rights, Florida Constitution, which provides: “All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.”

. Compare Morrison v. Farnell, 1936, 126 Fla. 385, 171 So. 528, 532, where the Supreme Court found no abuse of discretion on the part of the road department in locating a proposed route. The court observed that under some conditions property owners may have the right in continued traffic on certain streets. However, the court there found:
“ * * * There is no threat to destroy Duval street as a thoroughfare suitable for traffic. There is no threat' to physically injure any property on that street. The only threat is to turn, a part of the traffic on to a safer,, wider, and less dangerous way. * * * ” (emphasis supplied)
See also 16 Fla.Jur., Highways, etc., 78 et seq. ''